ROSA PITZELE *et al.*

*v.*

HARRIS COHN *et al.*

*Opinion filed October 24, 1905.*

1. INSOLVENCY—*right of creditor to purchase equity of redemption from the receiver.* A creditor may in good faith and with the approval of the court purchase the debtor's equity of redemption from the receiver at any reasonable price they may agree upon.

2. FRAUD—*when mortgage is not tainted with fraud.* Alleged fraud by a creditor in conspiring with an insolvent firm to defeat the claims of other creditors by buying the debtors' equity of redemption and conveying the property to their wives, cannot be set up to defeat foreclosure of a mortgage given by such wives to the creditor to secure the balance of the valid unpaid indebtedness of their husbands to him.

3. EQUITY—*wrongdoing such as debars party from a court of equity must be in a matter in litigation.* Wrongdoing such as will defeat a recovery upon the ground that the litigant does not come into equity with clean hands must be in regard to the matter in litigation, and does not concern other matters not immediately connected with the litigation.

4. MORTGAGES—*when decree should allow solicitor's fees and interest.* If debtor and creditor agree that solicitor's fees incurred in the prosecution of the creditor's claims shall be included, together with an item of interest on open account, in a note and mortgage given to the creditor to secure his demands, it is proper to include such items in decreeing the amount due on a foreclosure of the mortgage.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This was a bill in chancery filed in the superior court of Cook county by the defendants in error, against the plaintiffs in error, to foreclose a trust deed in the nature of a mortgage given by the plaintiffs in error to the defendant in error Newberger, as trustee, to secure the payment of a promissory

note for $2000 and interest, bearing date March 28, 1900, payable to the order of defendant in error Cohn. An answer and replication were filed and the case was referred to a master, who reported, recommending a decree in favor of the defendants in error for $2243.54. Objections, which were renewed as exceptions, were filed to said report by both parties, and a decree was entered dismissing the bill upon the merits. An appeal was prosecuted to the Appellate Court for the First District, where the decree of the superior court was reversed, and the cause was remanded to that court with directions to enter a decree of foreclosure for the face of said note and interest, and a writ of error has been sued out from this court to review the decision of the Appellate Court.

It appears that the plaintiffs in error Ascher and Nathan Pitzele, who are brothers, had been engaged in business, as partners, for many years as A. & N. Pitzele; that prior to October 15, 1898, they owned a store at South Chicago, which was in charge of Ascher Pitzele, and one at Dixon, which was in charge of Nathan Pitzele. On that day Ascher Pitzele filed in the circuit court of Lee county a bill in chancery against Nathan Pitzele, alleging, among other things, the insolvency of the firm of A. & N. Pitzele, and praying for the dissolution of the partnership and that its affairs be wound up, its indebtedness paid and its assets divided. Nathan Pitzele immediately entered his appearance in said cause, filed an answer in which he admitted the allegations of the bill to be true, and consented to a decree in accordance with the prayer thereof. Thereupon Charles H. Hughes was appointed receiver and took possession of the firm property, including its real estate. A. & N. Pitzele, at the time of the filing of said bill, owed H. Cohn & Son, of which firm H. Cohn was the senior member, the sum of $2373.78 upon open account for merchandise sold and delivered by H. Cohn & Son to said firm, and H. Cohn held the notes of A. & N. Pitzele, secured by mortgages for the benefit of his firm upon real estate of A. & N. Pitzele, to the amount of $13,000.

All of said indebtedness was proven up against the estate of A. & N. Pitzele by H. Cohn and H. Cohn & Son in the proceeding pending in the circuit court of Lee county, and afterwards the receiver in that proceeding paid on said claims dividends aggregating the sum of $2486.59.

At the time Hughes was appointed receiver the firm of A. & N. Pitzele owned two pieces of real estate in South Chicago, the title of which was in the individual members of the firm and which was conveyed by them to the receiver. The property described in this bill was encumbered by a first mortgage held by Chandler & Co. for $8000, and H. Cohn held thereon a second mortgage for $5000. Upon the other lot, which was vacant, H. Cohn held a first mortgage for $5500 and a second mortgage for $1250. Ascher Pitzele also owned a vacant lot located in South Chicago, upon which H. Cohn held a mortgage for $1250. In April, 1899, Charles H. Hughes, as receiver, filed a petition in the circuit court of Lee county for leave to sell, and obtained in that court an order authorizing him to sell to H. Cohn, the interest of A. & N. Pitzele in said two first mentioned properties for the sum of $100, which sale was made and approved by the court. Subsequently the unimproved lot was sold for $9000, and after satisfying the two mortgages held by H. Cohn thereon, aggregating $6750 and interest, the balance realized from such sale was applied upon the indebtedness of A. & N. Pitzele to H. Cohn and his firm, and the lot owned by Ascher Pitzele was sold and H. Cohn was paid the $1250 mortgage held thereon by him. Afterwards H. Cohn caused the premises in question to be deeded to Rose and Hannah Pitzele, the wives of Ascher and Nathan Pitzele. At the time H. Cohn deeded the premises in question to Rose and Hannah Pitzele, a loan for $8000 was obtained by them through Baird & Warner, which was secured by first mortgage on said real estate, and the proceeds were turned over to H. Cohn to apply upon the indebtedness of A. & N. Pitzele to him and his firm. After the application

of that fund there remained due, according to the claim of H. Cohn, to him and his firm from A. & N. Pitzele, the sum of $2870. That amount was satisfied by the execution of the note and trust deed for $2000 which forms the basis of this suit, the payment of $500 by A. & N. Pitzele to H. Cohn in cash, and the execution and delivery to H. Cohn of the two notes of plaintiffs in error, due in sixty and ninety days from date, for the sum of $185 each.

B. M. SHAFFNER, for plaintiffs in error.

CHESTER E. CLEVELAND, for defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended by plaintiffs in error that the $2000 note secured by said trust deed sought to be foreclosed herein is without consideration, and that the execution thereof was obtained by reason of fraud and misrepresentation, it being urged in support of such contention that at the time of the execution of said note and trust deed it was represented by H. Cohn to plaintiffs in error that he had not as yet been paid by the receiver of A. & N. Pitzele the dividends due him and his firm from their estate in the hands of said receiver, and that the said note and trust deed were given to H. Cohn to secure to him and his firm the payment of said dividends, and that as it appeared said H. Cohn and his firm had received said dividends prior to the time of the execution of said note and trust deed, the same was without consideration and was fraudulent and void. It clearly appears that H. Cohn and H. Cohn & Son had been paid their respective dividends by the receiver of A. & N. Pitzele long prior to the execution of said note and trust deed, and that said dividends were properly entered upon the books of H. Cohn & Son as credits in the account of A. & N. Pitzele, and that prior to the execution of said note and trust deed A. & N. Pitzele had received from H. Cohn & Son a statement of

their account, in which it appeared they were credited with said dividends and that said sum of $2870 remained due after the application of said dividends. We think, therefore, there can be no doubt that the dividends were properly credited to A. & N. Pitzele, and that they knew they had been credited therewith at the time they executed said note and trust deed. The contention, therefore, that said note and trust deed were given to secure the payment of said dividends and were obtained by fraud and misrepresentation is not sustained by the proof.

It is next contended by the plaintiffs in error that H. Cohn & Son are indebted to A. & N. Pitzele for the value of twenty-one boxes of merchandise shipped just before the failure of said firm from the Dixon store to the South Chicago store and transferred by teams from South Chicago to the store of H. Cohn & Son in Chicago. There is an irreconcilable conflict in the testimony in regard to the delivery of said merchandise to H. Cohn & Son. Ascher Pitzele and a drayman, a relative of the Pitzeles, testified said merchandise was delivered. They are contradicted by H. Cohn and eight or nine other persons employed in the store of H. Cohn & Son, who testified that said merchandise was not delivered. While Ascher Pitzele is in many particulars directly corroborated by his brother, a nephew and the drayman, and remotely by one or two other witnesses, he is contradicted by the drayman as to the number of boxes of merchandise which were delivered to H. Cohn & Son at the several times he says he delivered boxes of merchandise to H. Cohn & Son which he received at the South Chicago store, and when Ascher Pitzele was on the stand the first time, he testified in detail that all of said boxes of merchandise were delivered by him and said drayman at the rear of the store of H. Cohn & Son in the city of Chicago, which they reached by an alley which ran immediately in the rear of said store. Afterward, upon his attention being challenged to the fact that the store in which H. Cohn & Son

did business at the time he testified said deliveries were made had no alley in the rear thereof and that all goods at that time delivered at said store were delivered from the street in front of the store, he again went upon the witness stand and stated that he was mistaken when he testified that said boxes of merchandise were delivered at the rear of said store, and then stated they were delivered at the front of the store from the street. We do not believe that Ascher Pitzele was honestly mistaken in his testimony as to the place of the delivery of said goods, and fully endorse the remark of the Appellate Court made while considering the testimony of said witness, that "the recital of the alleged delivery of these goods from an alley which never existed is too circumstantial to be explained away. The attempted correction is futile, and justified the master, and justifies us, in paying little heed to the evidence of this witness." Said note and trust deed were executed long after it is claimed said twenty-one boxes of merchandise were delivered to H. Cohn & Son. At the time of the execution of said note and trust deed a cash payment of $500 was made upon the indebtedness of A. & N. Pitzele to H. Cohn & Son. The account was balanced by the delivery to H. Cohn & Son of two notes aggregating the sum of $370, signed by the plaintiffs in error, and no claim at that time was made by A. & N. Pitzele that H. Cohn had received said merchandise and that they should be credited with the value thereof or that its value should be otherwise adjusted, and in view of these facts we are forced to the conclusion that the merchandise referred to was not delivered to H. Cohn & Son. Especially are we impressed with this view from the additional facts that when the plaintiffs in error prepared and filed their answer in this case they made no reference therein to the delivery of said merchandise or the failure of H. Cohn & Son to account for its value, and did not claim that the indebtedness represented by said note and trust deed had been paid and satisfied by reason of the delivery of said merchandise to H. Cohn

& Son, but raised the question of the delivery of said merchandise for the first time upon the trial and after the defendants in error had closed their case in chief. In view of all the testimony we are of the opinion the Appellate Court did not err in holding that the plaintiffs in error were not entitled to credit for the value of said twenty-one boxes of merchandise, or any part thereof, upon said note and trust deed.

It is further contended that at the time H. Cohn purchased the equity of A. & N. Pitzele in said real estate, he and said Pitzeles had conspired with each other, and with the receiver of the Pitzeles, to cheat and defraud the creditors of said firm other than H. Cohn and his firm out of their just proportion of the said estate, and that as a result of such conspiracy H. Cohn and his firm received their claims against said firm in full while the other creditors thereof received but a small percentage of their claims, and for that reason said H. Cohn did not go into the superior court with clean hands, and that court, sitting as a court of equity, properly refused to afford him relief upon said note and trust deed,—and such, from the recitals contained in the decree entered in the superior court, appears to have been the view taken in that court. There is no evidence in this record which tends in any degree to show that the receiver was guilty of fraud or malfeasance in office in making a sale of the said real estate, subject to the mortgages thereon, to H. Cohn. Prior to filing the petition for the order of sale, in company with his solicitor he went to South Chicago, viewed said real estate and investigated the value thereof. In the petition filed in the circuit court of Lee county the receiver represented to the court that from an examination of the property, and from interviews had with disinterested persons who were acquainted with the value of the real estate, he was of the opinion that the equity of said estate in such real estate was of but little value; that he had been offered $100 by one of the lienholders

for a deed conveying to him the equity of A. & N. Pitzele therein, which offer he believed it was for the best interests of the estate to accept. The court, acting on such petition, ordered him to accept said offer, which he did, whereupon he reported the sale to the court, which was approved, and a deed was made, at the request of H. Cohn, to Charles A. Levy, conveying to him the interest of the estate in said real estate. No party, creditors or other person ever questioned the validity or good faith of said sale. No fiduciary relation existed between H. Cohn or his firm and the receiver, or between H. Cohn and his firm and A. & N. Pitzele. So long as H. Cohn or his firm was not guilty of fraud, H. Cohn had the right to purchase said equities of the receiver at such prices, with the approval of the court which had jurisdiction of said real estate, as he and the receiver might mutually agree upon; and even though H. Cohn agreed with A. & N. Pitzele that after their indebtedness to him and his firm, together with all disbursements made by him for the benefit of said firm, should be repaid to him, he would account to them for any balance remaining in his hands arising from the sale of said real estate, or to convey said premises to their wives upon the payment to him of said claims and disbursements, such facts would not defeat a recovery by H. Cohn upon said note and trust deed after the arrangement had been consummated by the conveyance to Rose and Hannah Pitzele of said real estate, and the execution to H. Cohn, by them, of the note and trust deed for the balance of the claims of himself and his firm against said A. & N. Pitzele. And if it were conceded that the original arrangement, whereby H. Cohn, through Charles A. Levy, obtained title to said real estate at said receiver's sale, was fraudulent, as an attempt to hinder and delay the other creditors of A. & N. Pitzele in the collection of their claims, we do not think the note and trust deed now sought to be foreclosed would be so tainted with fraud that in this suit the plaintiffs in error could set up such fraud and thereby

defeat the foreclosure of said trust deed. The real estate covered by the trust deed was transferred by Levy to Rose and Hannah Pitzele, and the note and trust deed in question were executed by them and their husbands to H. Cohn to secure the payment of what is conceded to be a valid debt of A. & N. Pitzele to H. Cohn and his firm, unless such indebtedness had otherwise been paid, which we have held it had not. The consideration of said note and trust deed was therefore a valid debt of A. & N. Pitzele to H. Cohn and his firm, and was not affected by the fraud, if any, whereby H. Cohn obtained title, through Levy, to said premises at the receiver's sale, and the payment of said note and trust deed cannot be defeated by showing that H. Cohn was guilty of fraud in acquiring the title to said real estate, as the wrongdoing which will defeat a recovery on the ground that a litigant does not come into a court of equity with clean hands must be in regard to the matter in litigation, and does not apply to the misconduct of the complainant in other matters not immediately connected with the then pending litigation. In *Guilfoil* v. *Arthur*, 158 Ill. 600, it was held a new contract founded on a new consideration, although in relation to property respecting which there had been unlawful transactions between the parties, is not itself unlawful. And in *City of Chicago* v. *Union Stock Yards and Transit Co.* 164 Ill. 224, it was said (p. 238) the maxim that a party must come into a court of equity with clean hands "only applies to the particular transaction under consideration, for a court will not go outside of the case for the purpose of examining the conduct of the complainant in other matters or questioning his general character for fair dealing. The wrong must have been done to the defendant himself and must have been in regard to the matter in litigation." And in *Phalen* v. *Clark*, 19 Conn. 421, the court said: "We suppose it to be a well settled doctrine that if a plaintiff requires any aid from an illegal transaction to establish his demand, he cannot recover it, or, in other words,

if he is unable to support it without relying upon an unlawful agreement between himself and the defendant he must fail. But if the parties have been engaged in business, either *malum in se* or merely prohibited by law, yet if the cause of action be unconnected with the illegal act and is founded upon a distinct and collateral consideration it will not be affected by their former unlawful conduct."

The master refused to allow an item of $466.43 paid by H. Cohn & Son as solicitor's fees in connection with the adjustment of their claims against A. & N. Pitzele and a small amount of interest upon the merchandise account, both of which items were included in the $2870 found to be due H. Cohn and his firm from A. & N. Pitzele at the time said note and trust deed were executed. The action of the master in this regard was overruled by the Appellate Court, and that court held the defendants in error were entitled to recover said amounts. We think the evidence establishes the fact that at the time that H. Cohn caused the mortgaged premises to be conveyed to Rose and Hannah Pitzele it was understood and agreed that if he would cause such premises to be conveyed to them he should be paid the balance due upon the claims due to him and due to his firm from A. & N. Pitzele, including all disbursements made by him or said firm, which would cover said solicitor's fees, and the evidence shows that A. & N. Pitzele agreed to pay H. Cohn & Son interest upon the open account. The items of solicitor's fees and the interest upon the open account having been agreed upon and having been included in the note and trust deed at the time the accounts were adjusted, we think the plaintiffs in error should be held liable for said items.

The judgment of the Appellate Court will therefore be affirmed.                                    *Judgment affirmed.*