James E. MacMurray, Appellee, v. Mortimer B. Flynn et al., Defendants. Appeal of Mortimer B. Flynn and Grace E. Flynn, Appellants.

Gen. No. 39,197.

Heard in the third division of this court for the first district at the October term, 1936. Opinion filed June 30, 1937. Rehearing denied July 12, 1937.

FRANK H. REPETTO and CHARLES J. TRESSLER, of Chicago, for appellants.

LITSINGER, HEALY, REID & BYE, of Chicago, for appellee; W. T. McNEILL, of Chicago, of counsel.

Mr. Presiding Justice Denis E. Sullivan delivered the opinion of the court.

This is an appeal from a decree of foreclosure entered in the circuit court for the sum of $182,282.61 in favor of plaintiff, James E. MacMurray, and against defendants Mortimer B. Flynn and Grace E. Flynn, his wife.

The evidence discloses that on December 1, 1927, Mortimer B. Flynn and Grace E. Flynn, his wife, deeded the premises since foreclosed, known as 7200–7210 South Shore Drive, Chicago, Illinois, to secure their indebtedness of $140,000, and on that date they signed their note for $140,000, payable to the order of themselves and by them indorsed in blank, said note being secured by said trust deed. The trust deed and note were turned over to the Union Trust Company. Said note was due 7 years after date, with interest at 5½ per cent per annum, payable on the first day of June and December of each year. The note became due December 1, 1934. As the interest became due on said note it was paid at the Union Trust Company's offices in Chicago and taxes on the property were either paid or protested as they became due.

The evidence on behalf of defendants further discloses that on September 21, 1933, more than 14 months before the principal note became due, James E. MacMurray, plaintiff, then the owner of said trust deed and note, entered into an agreement with Mortimer B. Flynn and Grace E. Flynn, defendants herein, whereby payment of the said note was extended as follows: $2,000 payable on the first day of December, 1934, and a like sum on the first day of June and December of the years 1935 to the first day of June, 1938, inclusive, and the sum of $124,000 on the first day of December, 1938.

The evidence on behalf of defendant further discloses that the agreement for extension provided for 10 interest coupon notes, securing the interest on said principal note at the rate of six per cent per annum and

payable semiannually on the first day of December and June with interest at the rate of seven per cent per annum, after maturity; that the first of these interest notes was for $4,200 due June 1, 1934; that the last one was for $3,720 due December 1, 1938, the amounts varying in accordance with the amount of the principal note then outstanding; that the extension agreement also provided that the other terms of the original trust deed were to remain in full force and effect.

The evidence for defendants further discloses that throughout the year 1934, payments in the amount of $6,697.74 were made by the defendants to the plaintiff under this extension agreement. In January, 1935, the plaintiff by his representative, Kenneth G. Anderson, agreed with the defendants that payments made in 1934 would be considered as a return of principal, and all interest be waived, provided the defendants would pay $1,000 a month to the plaintiff. In accordance with the first agreement, these monthly payments of $1,000 each were to be made on the 10th day of each month; that if said payments were made monthly, up to the close of 1935, the 1935 payments were to be credited as a return of principal and all interest waived. Subsequently, the date for the payment of these monthly payments of $1,000 each was extended to the 15th of the month and later until the 20th; that early in March, 1935, the defendants, through their attorney, inquired of the plaintiff's representative for definite statements as to how the plaintiff had treated the 1934 payments in his income tax return for 1934, as the defendants would of necessity, have to treat their federal return in the same manner and defendants were assured that the plaintiff had treated the 1934 payments as a return of principal in his income tax return; that this was not altogether "altruistic" on the part of plaintiff, as his income necessitated his paying income tax in the 48 per cent bracket and that plaintiff was convinced that, ulti-

mately, he would have a substantial loss on the principal of this mortgage and that it would be better for him, so far as his federal income tax was concerned, to take the loss each year, rather than take the entire loss to be deducted, in any one year; that payments were made by defendants to plaintiff of $1,000 monthly in 1935 to June 30, 1935; that plaintiff had repeatedly talked with defendants about the real estate taxes on this building which had not been paid; that defendants were, with plaintiff's consent and approval, working on these tax matters with the Cook county officials to get the taxes adjusted and have the penalties removed and get the property placed under the so-called six-year extension plan; that plaintiff repeatedly told defendants to get the taxes reduced and adjusted as soon as possible.

From the evidence before us it is quite apparent that agreements regarding the method and times of payment were more in the nature of forbearances by the plaintiff in an endeavor to permit the defendants to have more time in which to make their payments. There is no claim that any consideration moved from the plaintiff to the defendants for the verbal extensions of dates of payment.

It is further contended by defendants that the claimed failure of the plaintiff to make a proper return of his federal income tax and also his personal property tax to the Assessor of Cook county, would preclude the plaintiff from recovery in this case as plaintiff was not coming into court with clean hands. In order to invoke the "clean hands" doctrine in a court of equity, the wrongful conduct complained of must relate to the transaction and be directly connected with the matter in litigation, and that it has to some degree affected the equitable relations between the two parties, arising out of the transaction concerning which the litigation is being had.

In the case of *Fagan v. Rootberg*, 320 Ill. 586, the court at page 594, said: ''While it is a maxim in equity that he who comes into a court of equity must come with clean hands and one who does inequity cannot have equity, this maxim is limited in its application to cases where the substance of the thing is inequitable and the inequity applies to the particular subject matter. The maxim does not apply to every unconscientious or inequitable conduct on the part of the plaintiff but is confined to misconduct in regard to and connected with the matter in litigation, so that it has in some measure affected the equitable relation subsisting between the two parties and arising out of the transaction.''

We do not believe that the defendants were concerned in such a way that the alleged failure of the plaintiff to make a proper return of his federal income tax, or a proper return of his personal property tax schedule, as would justify them in setting same forth as a defense in this case. Such alleged misconduct did not grow out of nor could it be a proper matter for litigation in this action. The cases cited by counsel for defendants are not in harmony with the rule laid down by the courts of this State. *Messenger Pub. Co. v. Mokstad*, 257 Ill. App. 161; *Carpenters' Union v. Citizens' Committee*, 333 Ill. 225; *Anisfield Co. v. Grossman & Co.*, 98 Ill. App. 180; *Cohn v. Pitzele*, 117 Ill. App. 342, affirmed in 217 Ill. 30; *Consumers Co. v. Parker*, 227 Ill. App. 552.

In *Carpenters' Union v. Citizens' Committee*, 333 Ill. 225, the court at page 250, said:

''The rule that a complainant must come into equity with clean hands means that he must do equity as respects the defendant's rights in the particular matter of the suit. (1 Pomeroy's Eq. Jur. sec. 307.) The rule does not go so far as to prohibit a court of equity from giving its aid to a bad or a faithless man or a criminal.

The dirt upon his hands must be his bad conduct in the transaction complained of. If he is not guilty of inequitable conduct toward the defendant in that transaction his hands are as clean as the court can require.'' So, in this case, whatever may have been plaintiff's conduct in their transactions, we do not see that they are involved in the particular matters of this suit. In the particular matter at hand, we cannot find any real defense to the foreclosure of the mortgage. The money was borrowed and the agreement, as provided in the trust deed.and the extension thereof, to pay the taxes, interest and insurance was not observed. The money is still due and owing and the defendants are in default. We think the contention and argument of counsel for defendants is quite beside the point. The terms of the trust deed and extensions, as we have already stated, were not observed and the plaintiff had a right to the return of his money according to the terms of the note and trust deed. Defendants had a full opportunity to present any matters of real substance as a defense to this law suit but have not done so. We think the report of the master and the decree of the trial court were fully supported by the evidence produced and the defendants have offered no reason in law why the money due the plaintiff should not be paid.

For the reasons herein given the decree of the circuit court is hereby affirmed.

*Decree affirmed.*

HEBEL and HALL, JJ., concur.