John D. Gallagher, et al., v. Joseph A. Northrup.

Gen. No. 11,167.

1. RESULTING TRUST—*what does not create.* A voluntary convey-
ance cannot be held to create a resulting trust for the grantor.

2. EXPRESS TRUST—*what essential to establish.* An express trust be-
tween the grantor and grantee of land, when the grantee is to hold the
land in trust, or is to reconvey to the grantor on a certain contingency,
is invalid under the Statute of Frauds unless evidenced by some writ-
ing signed by the grantee.

3. DECLARATION OF TRUST—*when, valid.* A written declaration of
trust made after a conveyance of real estate, upon a parol trust agree-
ment, is valid and enforceable.

4. FRAUDULENT CONVEYANCE—*what is not a.* Where the title to
land is received in trust but such trust is not evidenced by a writing as
required by the Statute of Frauds, nevertheless an execution of such
trust by a reconveyance is valid and not fraudulent as against creidtors
of the grantee.

Gallagher v. Northrup.

5. CONVEYANCE—*when, will be set aside at the instance of a creditor of the grantor.* Where the owner of real estate has permitted the title thereto to remain in another, and such other has, by reason of the holding of such title, been permitted to create a legal obligation, such real estate will be subjected to the payment of such legal obligation notwithstanding its reconveyance to the true owner thereof.

Proceeding in aid of execution. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1903. Affirmed. Opinion filed June 3, 1904.

**Statement by the Court.** December 30, 1896, Hugh Gallagher and Winifred, his wife, conveyed to their son, John D. Gallagher, the lot known as No. 5336 State street, Chicago, by warranty deed which was at once recorded. February 13, 1897, John D. Gallagher offered himself as surety in a replevin bond, to the coroner of Cook County, and to qualify as such surety, made oath in an affidavit attached to the bond, that he was the owner in fee simple of said lot, that the same was worth $8,000 and that he had personal property of the value of $300. The deputy coroner who had the writ to execute, relying upon the statements made in the affidavit, accepted him as such surety and he executed the bond with one Billingly as principal and the replevin writ was then executed by the coroner. May 8, 1897, John D. Gallagher and wife conveyed said real estate to said Winifred Gallagher. No consideration was paid for either of said conveyances. The conveyance of May 8, 1897, left John D. Gallagher wholly without money or property to meet any liability on said bond. The trial of the replevin suit resulted in a judgment for the defendants with an award of a writ of *retorno habendo.* The goods taken on the writ were not returned and in an action on the replevin bond the coroner recovered for the use of Joseph A. Northrup, defendant in the replevin suit, a judgment for $1,008.58, upon which an execution was issued and returned unsatisfied. A bill was then filed in the Circuit Court by Northrup against John D. and Winifred Gallagher to subject to the payment of said judgment said real

estate, and from a decree declaring that said conveyance by John D. Gallagher to Winifred Gallagher was void and of no effect as against the rights of the complainant, and decreeing that said real estate be sold and the proceeds applied to the payment of said judgment, this appeal is prosecuted by the defendants to the bill.

W. P. BLACK, for appellants.

WHEELER, SILBER & ISAACS, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

The title to the lot conveyed to John D. Gallagher December 30, 1896, was in Hugh Gallagher. It was bought about 1884 with the proceeds of the sale of certain lots at Auburn Park, the title to which was in Hugh Gallagher. The Auburn Park lots were bought in 1880 with the proceeds of the sale of a lot on Almon street, the title to which was also in Hugh Gallagher. The Almon street lot was bought March 18, 1872, and the purchase price, $500, was paid out of the $600 which Winifred Gallagher had when married to Hugh Gallagher in December, 1871. All of said properties were improved by Hugh Gallagher, partly out of his earnings and partly with money borrowed upon mortgage upon the property improved. It is contended by the appellant that Winifred Gallagher was the real and equitable owner of all the properties above mentioned and that Hugh Gallagher held title thereto in trust for her.

The master found against this contention and that the furnishing by Winifred Gallagher to Hugh Gallagher of the money to pay for the Almon street lot, must be treated as a gift by her to him. But as the deed of December 30, 1896, conveyed the right, title and interest of both Hugh Gallagher and Winifred Gallagher in the lot to John D. Gallagher, the decision of the case does not, in our opinion, turn upon the question whether Hugh Gallagher was the real owner of said lot at the time of such conveyance, or merely held the title thereto in trust for Winifred Gallagher. The conveyance by Hugh and Winifred Gallagher

of the lot to John D. Gallagher did not create a resulting trust in favor of Winifred Gallagher, for a voluntary conveyance cannot be held to create a resulting trust for the grantor. Stevenson v. Crapnell, 114 Ill. 19. It is not contended that any express trust in her favor was manifested by any writing signed by John D. Gallagher. " An express trust between the grantor and grantee of land, when the grantee is to hold the land in trust, or is to reconvey to him on a certain contingency, is invalid under the Statute of Frauds unless evidenced by some writing signed by the grantee." Williams v. Williams, 180 Ill. 361–364. The evidence shows a verbal agreement on the part of John D. Gallagher to reconvey the lot to Winifred Gallagher upon request, but that agreement was not evidenced by any writing, nor was there any fact or circumstance to take it out of the operation of the Statute of Frauds. Winifred Gallagher could not have compelled a reconveyance of the lot to her by John D. Gallagher nor enforced in any manner the execution of a trust therein by him. But it was competent for John D. Gallagher to have made, at any time, a declaration of trust in writing, and such declaration though made after the conveyance to him could have been enforced by Winifred Gallagher against him and his heirs. If he could make a valid declaration of trust he could, without making such declaration, reconvey to Winifred Gallagher and thereby execute the trust. Silvers v. Potter, 48 N. J. Eq. 539. But if the conveyance of the lot by John D. to Winifred Gallagher be regarded as the execution of a trust, created by parol and not manifested by any writing, the question remains whether such conveyance is valid as against the rights of appellee. In Silvers v. Potter, *supra*, it is stated in the opinion that the indebtedness to Silvers, one of the complainants, was incurred after the conveyance by the trustee, and that Phillips, the other complainant, had actual knowledge of the trust, before the indebtedness to him was incurred.

Northrup became a creditor of John D. Gallagher when the replevin bond was executed and the writ served, and

not, as appellants contend, when the judgment was recovered. Bay v. Cook, 31 Ill. 336; Williams v. Banks, 11 Md. 242; Carlisle v. Rich, 8 N. H. 44; Hatfield v. Merod, 82 Ill. 113. By joining with her husband in the conveyance of the lot to John D. Gallagher, Winifred Gallagher vested him with the legal title and apparent ownership of the lot, under a parol trust that he would hold the same for her benefit, or a verbal agreement that he would reconvey to her on request. She voluntarily, with full knowledge, permitted the title to the lot to remain in him, without a request for a reconveyance, from December 30, 1896, to May 8, 1897, and February 13, 1897, John D. Gallagher stated on oath to the coroner that he was the owner in fee simple of the lot, the title to which was in his name, of record, free of encumbrance; that the lot was worth at least $8,000; that he had personal property of the value of $300, and that he was worth over and above his debts and liabilities, $8,300, and thereby the coroner was induced to accept, and did accept him, as surety on said replevin bond. If any person suffers, it should be Winifred Gallagher, and not Northrup, because it was her own folly to place herself and others in the power of John D. Gallagher, and she has been the cause of the loss sustained. It is a rule of equity that when one of two innocent persons must suffer, he who has been the cause must bear the loss. Keady v. White, 168 Ill. 76; Lowentrout v. Campbell, 130 Ill. 503; Anderson v. Armstead, 69 Ill. 452; Hockett v. Bailey, 86 Ill. 76.

The fact that the tenants of Hugh Gallagher remained in possession of the lot after the conveyance to John D. Gallagher, and were paying rent to Winifred Gallagher at the time the bond was executed, was notice to the coroner and to the beneficiary in the bond of all rights and equities that Winifred Gallagher had in the premises. But of what was such possession notice in this case? It was, at most, notice that Winifred Gallagher had a parol contract, voidable under the Statute of Frauds, with John D. Gallagher, for the conveyance of the lot to her on request, or that the lot was conveyed by herself and her husband to John D.

Gallagher, to be held by him in trust for her until such time as she should request a conveyance thereof to herself, which trust was void and of no effect under the Statute of Frauds because not manifested by any writing signed by John D. Gallagher, and John D. Gallagher repudiated the contract and trust in the most solemn manner, when he declared on oath to the coroner that he was the owner of the lot, and the value of the lot, as stated by him to the coroner, made up $8,000 of the $8,300 he stated to the coroner he was worth. In Pickerell v. Morss, 97 Ill. 220, Hiram Morris made a parol contract with Shelton for the conveyance of certain lands. He afterwards conveyed said land to Morss, and it was contended that Morss had notice of the prior parol contract to convey to Shelton. In the course of the opinion Mr. Justice Scholfield, after discussing the question whether the evidence shows such notice, says (p. 225): "But concede that the evidence is unquestionable and ample, what does it amount to? Simply that Hiram had a parol contract, voidable under the Statute of Frauds, with Shelton, for the conveyance to him of his interest in this land. Hiram could not be made to execute this contract, and Shelton also might refuse to perform it if he chose. No act of refusal to perform and signifying an intention to rely on the statute, in case specific performance should be insisted on by Shelton, could be more significant than the sale and conveyance of this interest to Benjamin Morss. Hiram might lawfully refuse to perform the contract, and lawfully sell and convey to another party. So, the notice of contract could amount to nothing. By selling and conveying to Benjamin Morss, Morss was invested, confessedly, with the prior legal title, and there can be no superior equity in favor of Shelton, because he can make no claim to any equitable contract prior to the execution of the deed to Morss. His mere moral claim on Hiram was not enforceable in equity. True, no one but Hiram could repudiate the contract on the ground that it was in violation of the statute, but he might do so, and when, by a conveyance of the property to another, he placed it out of his power to comply with the contract, he as effectually repu-

diated the contract as it was possible for him to do in advance of a suit against him for specific performance."

John D. Gallagher repudiated his parol contract and the trust created by parol, as clearly and effectually, by his statements on oath to the coroner, as did Hiram Morris repudiate his parol contract by conveying to another. Winifred Gallagher, when the replevin bond was signed, had no rights in the lot which she could enforce either at law or in equity. John D. Gallagher might, as Judge Scholfield said Hiram Morris might, "lawfully refuse to perform the contract (or execute the trust) and lawfully sell and convey to another party." As notice of Hiram Morris's parol contract was in that case held "to amount to nothing," so we hold that notice of the trust created by parol contract to reconvey on request, amounts to nothing as against the rights of the appellee in this case.

The decree of the Circuit Court will be affirmed.

*Affirmed.*