(No. 16872.—Decree affirmed.)
HYMAN GOTTLIEB, Appellee, *vs.* ABE Q. KAPLAN *et al.* Appellants.

*Opinion filed October 28, 1925—Rehearing denied December 4, 1925.*

SPECIFIC PERFORMANCE—*general rule as to when contract for conveyance will be enforced.* A contract for the sale of real estate which is fairly entered into without misunderstanding on the one hand or misrepresentation on the other, and which represents the intent and agreement of the parties at the time it was signed by them, will be specifically enforced as a matter of right and not as a matter of discretion.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

MAX M. GROSSMAN, and H. J. ROSENBERG, (SAMUEL GROSSMAN, of counsel,) for appellants.

MORRIS K. LEVINSON, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree reforming a certain contract for sale and transfer of real estate and decreeing specific performance of the contract as reformed.

The undisputed facts are, that appellants and appellee entered into a written contract for the sale of certain real estate for the sum of $45,000, subject to a mortgage in

the sum of $22,000, the balance to be paid $15,000 in cash and $8000 by second mortgage. One thousand dollars was paid as earnest money and $14,000 was to be paid on presentation of a good and sufficient warranty deed, with a certificate of title issued by the registrar of titles of Cook county or a merchantable title guaranty policy made by the Chicago Title and Trust Company.

The original bill filed by appellee is the usual bill for specific performance, setting out that complainant is ready, willing and able to perform, has given notice of demand for closing the contract, and has paid the sum of $1000 and tendered the balance of the cash price, together with notes covering the $8000 second mortgage. Later a supplemental bill was filed asking for reformation of the contract on the ground of mutual mistake of fact. The appellants answered the bill and supplemental bill, denying appellee's right to specific performance of the contract, and contending that the contract was not fairly and understandingly entered into, was uncertain and did not represent the agreement between the parties. It is not denied that the contract was signed by all parties or that the earnest money was paid or the balance of the cash payment was tendered. It is contended that no tender was made of the necessary notes covering the $8000 balance to be represented by a second mortgage as that matter was covered in the contract, although it is admitted that notes and a trust deed were offered to cover the $8000 mortgage in accordance with the contract as reformed. The payment of the $8000 purchase price was provided in the contract in the following language: "The balance to be paid as follows: Taxes for year 1922 and 1923 shall be prorated from January 1, 1922, to date of delivery of deed, and all credits due as a result of prorating shall be deducted from the aforesaid $14,000, and the balance then due shall be payable in monthly installments of $225 per month. The first of said monthly installments of $225 shall be payable four months from date

of delivery of deed and a like payment every month there-
after for thirty-five (35) months, and balance shall be paid
thirty-sixth (36th) month from date of delivery of deed.
Said monthly payments may be paid on or before their
maturity, with interest from the date of deed at the rate of
six per cent per annum, payable monthly, on the whole sum
remaining from time to time unpaid, to be secured by the
purchaser's notes and mortgage, or trust deed, of even date
herewith, on said premises." The supplemental bill set out
that this was a mistake of the scrivener, and that instead
of payments of $225 per month for thirty-five months after
the first payment of such sum, with balance due to be paid
on the thirty-sixth month from the date of delivery, the
contract should, in effect, read that $225 shall be payable
four months from the date of delivery of the deed and a
like payment thereafter for thirty-four months, and the
balance shall be paid on the first of the next month there-
after. On hearing, the court reformed the contract in ac-
cordance with the prayer of the amended bill, and while
appellants argue that the court was not justified from the
evidence in so doing, they do not cite evidence supporting
a contrary view, and an examination of the evidence dis-
closes that the $8000 under the second mortgage was to be
represented by thirty-six notes,—thirty-five of $225 each
and one of $125,—and that the first of these notes was to
be paid four months after the delivery of the deed and one
each month thereafter until all were paid. So far as that
feature of the decree is concerned we see no error therein.

The principal contention of appellants is that the con-
tract, though signed by the parties, was not to be in force
until after it had been submitted to counsel for appellants,
and that it was not understandingly made. It appears from
the evidence of appellee's witness Samuel B. Blanksten,
a member of the bar of the city of Chicago, that he, with
the parties to the contract and others, met at the home of
appellants on January 3, 1923. There were present the

Kaplans, their two sons, (one a boy sixteen years of age and the other fourteen,) Alper, a real estate broker, and appellee and his son-in-law, Blumert.  The testimony of this witness tends to show that after considerable discussion, during which conversation appears to have been entered into somewhat freely by everyone present, he was requested to, and did, draw the contract in accordance with the instructions of the parties thereto.  He testified that he asked Mrs. Kaplan if she was going to have a lawyer, and she said it would not be necessary, as her oldest boy would take care the contract was drawn as agreed; that appellants' son took the contract, read it over and told his parents it was all right, just as they agreed; that on the same evening a copy was drawn up and given to the Kaplans, with instructions to give it to their lawyer.  A check for $1000 was given to the Kaplans.  This witness testified that Mrs. Kaplan made no objection to the signing of the contract and participated in the drawing of it; that it was read over to appellants.  He also testified that the next morning he secured the guaranty policy on the title of the property and took it to the proper source for its continuation, and that on that day or the next he called up counsel for appellants and told him that the contract had been signed and asked if he had received a copy; that he said he had, and in answer to witness' question whether or not it was all right, said it appeared to be perfectly fair; that he later called up appellants' attorney and asked about closing the deal, and the attorney told him that he was ready to close at any time his clients were.  There appears to have been no contradiction of this testimony.  Some days later, the deal not having been closed, Blanksten inquired of appellants' lawyer, and was told that Mrs. Kaplan would not go through with the deal but that Kaplan did want to go through with it.  Blanksten's testimony as to what took place at the house was corroborated by appellee and his son-in-law, Blumert, and Alper, the broker.

It appears from appellee's testimony that there was a discussion as to the payment of the notes representing the second mortgage, which was adjusted by appellee agreeing to pay the first note four months after the receipt of the deed. Appellants contend that Blanksten had told them that the second mortgage could be cashed in full at the bank, and their evidence showed that an attempt to do so disclosed that in order to make the transfer for cash a substantial discount would be necessary. Blanksten denied that he told appellants that the mortgage could be sold without discount, and in this he is corroborated by appellee's other witnesses who were present and is contradicted by the appellants and their sons.

We are of the opinion that the weight of the evidence shows that this contract was entered into understandingly and fairly after the same had been read over to appellants, and that they were told by their son that it was the way they desired it. In fact, no evidence is disclosed to the contrary, except as to the sale of the $8000 second mortgage and the amount of commission to be paid to Alper. Appellants in their testimony claim that they were not to pay Alper more than $350. This amount was put into the contract, though Alper later claimed more and started suit against them for a much larger sum. Although this is argued as a reason why the contract should not be specifically performed, Alper's suit against appellants for his commission has nothing to do with the case. It is clear from the evidence that the sum of $350 as commission to be paid Alper by appellants was inserted in the contract in his presence. Whatever his arrangement may have been with appellants outside of that is not a matter of concern here.

Appellants also contend that Alper was Gottlieb's broker and not theirs, but as the contract shows that they are to pay Alper the sum of $350, that matter is settled so far as this lawsuit is concerned. Mrs. Kaplan testified that she

was tired and nervous on the night on which the contract was drawn and signed by her and that she asked to have her lawyer present, and that Blanksten told her to sign it, and that if it were not all right with her lawyer there would be no contract, and that she could get $8000 cash for the mortgage whenever she went to the bank, and that she a few days later told appellee and Blanksten that the contract was not satisfactory and that they could have their money back. She admitted, however, that Blanksten gave her a copy of the contract and that she gave it to her lawyer the next day; that she went to the bank with appellee the next day and got the $1000 on appellee's check. Kaplan testified substantiating his wife's testimony in some parts. He testified that his wife did not want to sign the contract; that when he went to the bank to inquire about getting cash for the second mortgage he was told it would cost about $1200 discount to cash it. He testified that he told appellee that the deal was not satisfactory, but that he did not offer back the $1000 put up.

While there is much contradiction of testimony, as frequently appears in cases of this character, we are of the opinion that the chancellor was justified in finding that the contract was fairly entered into and that as reformed it represented the intent and agreement of the parties. The rule is, that where a contract for the sale of real estate is entered into without misunderstanding on the part of the vendee and without misrepresentation on the part of the vendor, specific performance will be granted as a matter of right and not as a matter of discretion. *Mackie* v. *Schoenstadt,* 307 Ill. 398; *Broderick* v. *Driscoll,* 301 id. 174; *Riemenschneider* v. *Tortoriello,* 287 id. 482.

The decree was justified by the evidence in the case and will be affirmed.          *Decree affirmed.*