SAMUEL FAGAN *et al.* Appellants, *vs.* ABRAHAM ROOTBERG *et al.* Appellees.

*Opinion filed April 23, 1926.*

1. SPECIFIC PERFORMANCE—*when defense is not proved by introducing copy of affidavit in evidence.* A defense to a suit for specific performance of a contract for conveyance that the purchasers had falsely stated that no broker had submitted the property to them is not established by introducing in evidence a certified copy of an affidavit which a broker had recorded claiming an interest in the property to the extent of commissions, where the introduction of the document is limited by counsel to the purpose of showing merely that such affidavit was filed and there is no evidence of its truth.

2. SAME—*when specific performance will be granted as a matter of right.* Where a contract for the sale of real estate is entered into according to law and with complete understanding and fairness on both sides, and where the complainant stands ready to perform his part of the contract, specific performance will be granted, not as a matter of discretion or favor but as a matter of right, where the rights of third parties have not intervened.

3. SAME—*when taking possession is not a breach of contract defeating right to performance.* Where a contract to purchase an apartment building calls for delivery of the deed when the building is completed, the act of the purchasers in taking possession of a portion of the building a little more than a month prior to time for delivery of the deed does not constitute such a breach of the contract as to defeat their right to specific performance, where the vendors, by the terms of the contract, could not lease any portion of the premises without the consent of the purchasers; but the vendors are entitled to any damages arising out of the taking of possession.

4. CONTRACTS—*when breach will not defeat rights under contract.* The rights of the parties under a valid contract are absolute and will be enforced in the absence of a breach going to the essence of the contract, and a breach of a stipulation which does not go to the essence of the agreement or render performance of the rest of the contract different, in substance, from what the other party contracted for will not entitle the latter to repudiate the agreement where he can be compensated in damages.

5. EQUITY—*when legal rights under contract will be enforced.* Rights under a contract are governed by rules of the law of contracts, but a court of equity, having jurisdiction in a proper case, will enforce such rights unless the party relying upon the contract has by his own conduct made such enforcement inequitable.

6. SAME—*when maxim as to complainant doing equity does not apply.* The maxim that he who comes into a court of equity must come with clean hands, or that one who does inequity cannot have equity, does not apply to every unconscientious or inequitable conduct on the part of the complainant, but is confined to misconduct in regard to the substance of the matter in litigation which in some measure affects the equitable relation subsisting between the parties and arising out of the transaction.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. ·

MAX M. GROSSMAN, and H. J. ROSENBERG, (SAMUEL GROSSMAN, of counsel,) for appellants.

SIMEON STRAUS, IRA E. STRAUS, and WILLIAM LEVINE, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

The appellants, Samuel Fagan and Paula Fagan, his wife, filed their bill in the circuit court of Cook county seeking specific performance of a contract entered into between them and the appellees, Abraham Rootberg and Becky Rootberg, his wife, for the sale of a certain apartment house in the city of Chicago for the sum of $128,000. There is no denial of the contract or any claim that it was not knowingly and fairly entered into or that it is in any way un-

fair or invalid, but the appellees claim that the contract was breached by the appellants taking possession of the property before they were entitled thereto, and for the further reason that they represented that the property had not been submitted to them by a real estate broker, which the appellees claim is not true.

By the contract, which was dated February 24, 1923, the vendors were to complete the building, then in course of construction, by May 1, 1923. By the terms of the contract $2000 was acknowledged paid by the vendees on the date thereof and $1000 was to be paid one week thereafter. On May 1, 1923, on acceptance of the title, the vendees were to pay $23,000, and were to pay $22,000 in monthly installments of $550, commencing one month after the delivery of the deed, with interest. Deed was to be delivered May 1, 1923. The balance of $80,000 was to be secured by a first mortgage on the premises. The $3000 was paid in accordance with the terms of the contract. The contract was made subject to four existing leases covering certain of the apartments, and it was provided that leases could be made by the vendors subsequent to the date of the contract only with the approval of the vendees. The vendees were to receive the rents after delivery of the deed on May 1.

The bill alleges that the Rootbergs on April 26, 1923, repudiated the contract and tendered back the $3000 paid by the appellants; that on that day the appellants were served with a notice claiming repudiation of the contract on the ground that they had prematurely taken possession of the building contrary to the terms of the contract, and for the further reason that they had falsely stated in the contract that no broker had submitted the premises to them as purchasers, whereas an affidavit had been filed against the premises by a broker claiming to have submitted such premises to the appellants. The bill also charges that, contrary to the terms of the contract, the appellees had on March 24, 1923, entered into a lease with Julius Reback for the sec-

ond floor apartment of the premises for a period of two years from May 1, 1923, which lease was not ratified by the appellants but was contrary to their wishes in the matter, and that the second floor apartment was, by agreement made subsequent to the contract, to be reserved for the appellants and was not to be leased. The bill alleges that Reback, through a conspiracy with the Rootbergs, commenced a forcible entry and detainer proceeding against the appellants to secure possession of the apartment, which action was based on the pretended lease given to him by the Rootbergs, though Reback knew when the purported lease was given that the property had been sold to the appellants. The bill, which was filed on May 27, 1923, prayed specific performance of the contract of conveyance, an accounting for rents received after May 1, and an injunction against Reback to restrain his prosecution of the forcible entry and detainer suit. The Rootbergs answered the bill, denying its material allegations and alleging that the appellants were guilty of forcibly breaking into the premises on March 27, 1923, in violation of the contract, and that they had falsely stated that no broker had submitted the property to them for sale. The answer also denied that they made any agreement regarding the right of the appellants to take possession of the premises prior to the consummation of the contract or that they entered into a conspiracy with Reback. The cause was referred to the master in chancery, who heard the evidence and reported the same with the recommendation that the prayer of the bill be granted. On hearing on exceptions filed to the master's report the same were sustained and a decree entered dismissing the appellants' bill for want of equity.

The question before us in this case concerns the sufficiency of the defense of the appellees, which is, first, that the appellants represented that no broker had submitted the property to them, whereas a broker had filed an affidavit claiming to have so submitted the property. The master

finds there is no evidence that the representation of the appellants concerning this matter is not true. The appellees offered in evidence a certified copy of the affidavit filed of record by one Wallbasht on March 5, 1923, claiming an interest in the property to the extent of commissions. This affidavit was limited by the appellees' counsel for the purpose, only, of showing that such an affidavit was filed. There is no evidence whatever that the affidavit is true or that the representation of the appellants concerning that matter was untrue. The finding of the master therefore is supported by the record and this defense must fail.

The second ground, and the one seriously argued here, is that by moving into the second floor apartment on March 27 the appellants so breached the contract as to destroy their right to specific performance. The appellants contend here, and testified on the hearing, that the second floor was to be reserved for them; that two weeks prior to their moving in, Rootberg had given Mrs. Fagan the key to this apartment. On re-reference the master found that such agreement was not shown by a preponderance of the evidence but nevertheless recommended the prayer of the bill be granted, for the reason that the possession of this apartment by the appellants, though not shown to be by agreement, was not such a possession as to deprive them of their right to specific performance.

The evidence shows that on March 27, about seven o'clock in the morning, the appellants moved into the premises. Rootberg, on hearing that this was true, went to the place. The master finds that he there assaulted Mrs. Fagan and threw a portion of her furniture out onto the ground, breaking it. The evidence also shows that he was thereafter arrested for assault and was later in the evening assaulted by someone and severely beaten. The master found that the evidence does not show who this person was, or whether or not the appellants had anything to do with this assault.

While there is a sharp contradiction in the testimony of the appellants and the appellees concerning an agreement that the second floor apartment was to be reserved for the appellants, there are certain circumstances and evidence which tend to corroborate the appellants in that regard. An attorney who advised these parties as to the sale, testified that while he did not hear any agreement made about the matter there was conversation in his office concerning the use of this apartment by the appellants. Mrs. Fagan testified that Rootberg had given her the keys some days previous to their taking possession. While this is denied by Rootberg he does not deny that she had the keys, but testified that while he was in the apartment on March 27 he dropped the keys and she seized them. The record does not show that the apartment was broken into, and according to Rootberg's testimony he did not drop the keys until after the appellants had moved into the apartment. Moreover, no good reason is seen why Rootberg should object to reserving the apartment for the appellants as the latter were the purchasers of the property, and Rootberg by the terms of the contract could not lease that apartment to anyone else without the approval of the appellants, which it is not contended was given. Rootberg by his testimony admits that the Fagans did not agree to the leasing of this apartment to Reback. Reback knew that the sale had taken place, therefore his purported lease was made contrary to the terms of the contract, and since Rootberg had no authority to give him a lease without the consent of the appellants, the lease was of no avail as against the appellants. We say, therefore, that there is much in the evidence tending to corroborate the appellants on the issue of this agreement concerning the second floor apartment.

Assuming, however, as found by the master, that such an agreement was not shown by the preponderance of the evidence, we come to the question whether by taking possession of the apartment before May 1 without authority the

appellants forfeited their right to specific performance of the contract. The contract is silent as to possession, except the inference to be drawn from the provisions that the vendees were to have delivery of the deed on the first of May, 1923, and a right to the rentals thereafter. It is not contended by the appellants that they are not liable to pay the appellees a reasonable rental for the use of the apartment up to May 1, though it does not appear that the appellees demanded such rental. It seems clear that the possession of the premises by the appellants, with the consequent right of the appellees to receive rental therefor to May 1, could in nowise injuriously affect or damage the appellees. While they had attempted to lease the property to Reback, they had no right to do so without the approval of the appellants, which was not given. The occupancy of the apartment by the appellants was an advantage, rather than an injury, to the appellees. Therefore, unless the bare fact that they without authority took possession of this apartment breaches the contract, it does not appear that the appellees were entitled to repudiate it.

The appellees contend that such possession is a breach of the contract, and that this being so, the appellants are not entitled to specific performance for the reason that they do not come into equity with clean hands. The appellants made no attempt to take possession of the entire premises. No attempt was made on their part to collect any of the rentals or exercise any jurisdiction whatever over the balance of the premises. The construction of the building continued unmolested, and the appellees continued to collect the rentals from the occupants other than the appellants. Possession of this apartment could not, therefore, be said to be possession of the entire premises. Assuming the possession of this apartment by the appellants to have been a breach of one of the implied terms of the contract, was it, under the circumstances of this case, sufficient to defeat their right to specific performance? This question has not

been previously presented to this court. It is the settled rule in this State that where a contract for the sale of real estate is entered into with complete understanding and fairness on both sides and the party seeking specific performance stands ready to perform his part of the contract, such relief will be granted, not as a matter of discretion or favor but as a matter of right, where the rights of third parties have not intervened. (*Gottlieb* v. *Kaplan,* 319 Ill. 60; *Park* v. *Koopmann,* 311 id. 350; *Mackie* v. *Schoenstadt,* 307 id. 398; *Riemenschneider* v. *Tortoriello,* 287 id. 482.) It is the law of contracts that a contract having once been established as valid the rights of the parties thereunder become absolute, and in the absence of a breach thereof going to the essence of the contract it will be enforced. This has long been the rule in this State. In *White* v. *Gillman,* 43 Ill. 502, it was held that though one party may not have performed the contract to the letter, the other may not escape the force of it if he has received the thing contracted for. If the breach which does not go to the essence of the contract has caused him damage he may have such awarded at the hands of a jury. In the early case of *Bettini* v. *Gye,* 1 Q. B. 183, it is said that the court will determine whether the stipulation which is breached goes to the root of the matter, so that a failure to perform it would render the performance of the rest of the contract a thing different, in substance, from what the other party had stipulated for, or whether it merely partially affects the contract and may be compensated for in damages. While this action is in equity, rights under the contract are governed by rules of the law of contracts, and will be enforced by courts of equity unless the party relying upon it has by his own conduct made such enforcement inequitable. We are of the opinion that, applying these rules, the Rootbergs were not entitled to repudiate the contract because of the possession of a portion of the premises by the appellants. Such possession did not injuriously affect the rights of the Rootbergs or interfere

320—38

with or change the benefits stipulated for by them. They have their action against the appellants for any damages arising out of such possession.

The appellees contend, however, that the appellants have done that which they had no right to do, and that therefore, when they come into equity seeking specific performance of this contract, they do not come with clean hands, and that equity will not grant them relief. While it is a maxim in equity that he who comes into a court of equity must come with clean hands and one who does inequity can not have equity, this maxim is limited in its application to cases where the substance of the thing is inequitable and the inequity applies to the particular subject matter. The maxim does not apply to every unconscientious or inequitable conduct on the part of the plaintiff but is confined to misconduct in regard to and connected with the matter in litigation, so that it has in some measure affected the equitable relation subsisting between the two parties and arising out of the transaction. *Barnes* v. *Barnes,* 282 Ill. 593; 1 Pomeroy's Eq. Jur. sec. 399; *City of Chicago* v. *Union Stock Yards. Co.* 164 Ill. 224.

In *Ely* v. *King-Richardson Co.* 265 Ill. 148, the complainants filed their bills in chancery against the defendant company for an accounting for salary earned and for other relief. It was contended by the company that the complainants did not come into court with clean hands, because, they said, they had, while in the employ of the company, begun the organization of a rival corporation in the same business for the purpose of carrying on business in competition with the defendant, and had induced a number of employees of the defendant to leave its employment and enter the employment of the new corporation, for which reason the complainants were discharged. It was there said: "Even if the conduct of the complainants was inconsistent with good faith to their employer and constituted a breach of their contract, they did not thereby forfeit the compensa-

tion which they had before earned. They might be liable for damages for the breaches of their contracts,—perhaps they might be enjoined from pursuing a course of conduct inconsistent with their contract obligations,—but they could not be deprived of their compensation already earned. * * * The maxim that he who comes into equity must do equity cannot deprive the complainants of their right to an accounting which is not founded in any way upon their wrongful conduct."

In *VanDyke & Drew* v. *Cole*, 81 Vt. 379, the bill sought specific performance, and the defendant contended that the complainant was not entitled thereto because while in possession of the property involved he had cut more timber than he was authorized by the contract to cut. The court held that the violation of such term of the contract should not be held to defeat the right to a specific performance.

In *Langdon* v. *Templeton*, 66 Vt. 173, a bill in equity to quiet title was instituted on the ground that the complainant had taken possession of the property in question forcibly and in violation of a statute. The court found that under the facts of the case the complainant was entitled to the relief sought unless he had lost that right by reason of the forcible manner in which he took and obtained possession of the lot, which defendant claimed was in violation of the statute. It was there said: "This claim is based upon the maxim that he who comes into equity must come with clean hands; but this maxim, salutary in principle and broad in application as it is, has its limits, and the administration of equitable relief in particular controversies is confined to misconduct in regard to the matter in litigation that has in some measure affected the equitable relations of the parties in respect thereto and the equitable rights asserted by the orator. (1 Pomeroy's Eq. Jur. sec. 399.) It is said in *Meyer* v. *Yesser*, 32 Ind. 294, that fraud without injury is never available as a defense in equity." It was there held that the manner of taking possession by the complainant had in

nowise injured the party defendant and in nowise affected his equitable rights, and that therefore the maxim was not applicable.

In this case we have seen that the contract was understandingly and fairly entered into, and, so far as anything is shown by the evidence, is a fair contract in all particulars. Under its terms, leasing or occupancy of the various apartments could be had only with the approval of the vendees. The attempt to lease to Reback the apartment desired by the vendees did not meet with their approval. No rights or liabilities therefore arose concerning such attempted lease that in any way affected the vendors or the contract of sale. By reason of the right of the vendors to have the rental of the premises up to May 1, 1923, the occupancy of this apartment by the vendees was to the vendors' advantage rather than their detriment. The act of the appellants in nowise affected the rights of the Rootbergs under the contract or depreciated in value the thing they were to receive thereunder. Moreover, the bill in nowise rests on any advantage secured to the appellants by taking possession of the apartment. Such possession, though it be conceded to be wrongful, in nowise affected the equitable rights or relations of the parties under the contract. The maxim contended for does not apply.

We are of opinion, therefore, that it was error on the part of the chancellor to deny specific performance. Since Reback acquired no rights by reason of the purported lease which the appellants were bound to respect, they were entitled to the writ of injunction against him as prayed.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*