First National Bank of Ottawa, Illinois, v. Sidney W.
Weise and Bessie Weise, Appellants.

Gen. No. 10,135.

2

Opinion filed December 5, 1947. Rehearing denied January 16, 1948. Released for publication January 16, 1948.

RICHOLSON, WILHELM & DAVIES and ROBB J. PURCELL, all of Ottawa, for appellants.

HIBBS & POOL and CARR, CARR & CARR, all of Ottawa, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

In a proceeding instituted by plaintiff, The First National Bank of Ottawa, Illinois, to establish a trust on property held by defendant, Bessie Weise, for the use of plaintiff and defendant Sidney Weise, the circuit court of LaSalle county entered a decree in favor of plaintiff, and defendants are prosecuting this appeal therefrom.

Inasmuch as this cause involves determinations of fact as well as questions of law, it is incumbent upon this court to review rather fully the business relationships of the parties hereto and the circumstances surrounding the same.

The LaSalle County Fair Association originally owned the property in controversy and executed a mortgage thereon to the First Trust Company, a subsidiary of plaintiff, to secure certain notes including a note owned by plaintiff for $5,508.40 and a note owned by defendant Sidney Weise for $240. The mortgage was foreclosed on June 3, 1926, and the First Trust Company purchased the premises and held title as trustee for the noteholders until its dissolution on June 28, 1934, when title and trusteeship devolved upon the plaintiff.

It appears that some time prior to November 1939, the defendant Sidney Weise, who had charge of the care of the fair grounds negotiated with two of plaintiff's executives and entered into an oral agreement with them whereby both parties could realize a financial return on the notes owing to them from the LaSalle County Fair Association.

The evidence is conflicting as to the certainty and binding character of this agreement, defendant contending that it was very nebulous, and plaintiff insisting that it was definite and in terms identical to those incorporated in a subsequent written contract.

From July 8, 1939 to November 16, 1939, defendant Sidney Weise purchased the interests of the other principal noteholders with funds furnished by the plaintiff, and on November 16, 1939, plaintiff delivered to defendant Bessie Weise a quitclaim deed conveying to her its interest in the fair grounds. Concurrently therewith defendants executed and delivered their note for $6,750 together with a mortgage as security for the repayment of the note.

With money advanced by plaintiff defendants thereafter filed a bill for partition of the premises, apparently in an effort to clear the title of the remaining interests, and plaintiff was a party defendant to that proceeding. The property was sold pursuant to the decree, and purchased by Bessie Weise who received a master's deed to the premises on February 17, 1940. Thereupon Bessie Weise and Sidney Weise executed and delivered their note for $10,000 together with a mortgage as security therefor. No money, however, was paid for the deed by defendants, and it is their contention that their $10,000 note constituted payment. Plaintiff, however, claims that the note and mortgage was given as security for money advanced and to be advanced by plaintiff to defendants.

The property at this time was valueless and encumbered with tax liens and general and special assessments in the amount of $16,328. Defendant Sidney Weise proceeded to pay off the obligations from income from the property and from monies advanced by plaintiff for which defendants gave their notes.

On December 10, 1941, defendant Sidney Weise presented plaintiff with a written report of the financial status of the fair ground property. This document also recited that the bank was to receive half of the amount due on its original note of $5,508.40 from the LaSalle County Fair Association, and that the amount would be paid from the sale of the property or from

rentals. The report acknowledged, moreover, that to date the bank received nothing for its interest in the property.

It further provided, "Gentlemen's Agreement herewith put in writing. Any profits from sales or rentals, or any and all receipts over and above this amount of $2,750 shall be divided equally between the present owners and First National Bank. Sidney Weise is to receive $120 for his interest of $240 being on the same basis as the First National Bank payment. It is agreed that amount mutually agreed upon shall be paid to Sidney or Bessie Weise for making sales or commissions if undue amount of time is expended."

Defendants thereafter continued to manage the property and use their best efforts to enhance its value. It is presently used for "war housing" under an agreement with the federal government and has a high valuation. Defendants have paid off all of their indebtedness secured by the $10,000 mortgage with the exception of $1,500 still owing to the plaintiff.

Other than the aforementioned report of December 10, 1941, no other written instrument was executed by the parties until February 1, 1945, when plaintiff submitted to defendants a draft of a contract purporting to recite the history of the transaction and the terms thereof, as well as modifications for future procedure. Defendant Sidney Weise revised this draft and prepared on his own typewriter the final copy which was signed by the defendants and one of the bank's executives.

This written document recited that although absolute title was established in Bessie Weise by virtue of the partition sale for the mutual convenience of the parties, nevertheless she held the property for the benefit of the plaintiff and defendant Sidney Weise and that the full partnership of the bank was acknowledged and agreed to by both parties.

The instrument provided further that for managing the property Sidney or Bessie Weise were to receive 50 per cent of the gross rents collected, and that after payment of taxes, expenses and the management fee, the balance was to be applied first on any indebtedness due the bank and then on the payment of the preferred claims of $2,750 due the bank and the $120 owing to defendants. The remainder of the net proceeds was to be divided equally between the plaintiff and the defendants.

The contract also reiterated that Sidney and Bessie Weise were to receive a commission on the sale of any of the property and that they were to be compensated for any and all past commissions which they failed to deduct.

This agreement was confirmed by defendant Sidney Weise in subsequent correspondence with the bank, wherein he also acknowledged the bank's interest under a prior agreement obtaining between the parties. In his letter of June 27, 1945, to the president of the plaintiff bank, defendant stated, ''Notwithstanding there was a previous agreement or rather contract covering the liquidation of the Fair Ground property, on February 1, 1945 we signed with E. Haeberley a new agreement that was eminently fair to the First National Bank. . . .''

In his correspondence of October 3, 1945, defendant again admitted, ''You always had an agreement and when I was asked for it, gave you immediately a better one that protected the interests of the Bank just as strongly as I could word it.''

On the basis of the foregoing evidence the circuit court entered a decree providing that Bessie Weise held title to the property under the agreement as trustee for the use of plaintiff and Sidney Weise, and that defendants and plaintiff shall each present an accounting to a master for determination of the proper amount

due and owing to the parties upon a liquidation of the property.

The fundamental inquiry upon this appeal is whether the acts of the parties created a debtor-creditor relationship or a trust, and if a trust were created, whether it is enforceable in a court of equity.

Plaintiff contends that an enforceable trust was established, whereas defendants insist that the relationship between the parties was merely that of debtor and creditor; that the master's deed to Bessie Weise cannot be varied by parol evidence; that plaintiff was guilty of laches; that the acts of the bank were ultra vires; that the doctrine of res 'adjudicata barred this action; and that plaintiff as original trustee could not acquire any interest in the property.

■ It is apparent from the record that plaintiff and defendants did enter into a definite oral agreement on or about July 1939, with reference to the LaSalle County Fair property whereby they sought to realize some financial returns on the notes owing to them from the Fair Association. This conclusion is supported by Sidney Weise's testimony that he sold a "program" to the bank executives, his admission that he had at all times prior to the institution of this litigation recognized the existence of an agreement and intended to comply therewith; and his correspondence with the bank referring to an existing agreement prior to the written contract of February 1, 1945.

■ The terms of that agreement are ascertainable both from the conduct of the parties and from certain written evidence. Immediately after his negotiations with the bank executives, defendant Sidney Weise purchased the outstanding interests in the property held by the principal noteholders with funds loaned by the plaintiff. The latter quitclaimed its interest to Bessie Weise and advanced the money for a partition sale whereby a merchantable title could be obtained.

Although Bessie Weise took title under the master's deed, it is clear from the nature of that proceeding and from the report of December 10, 1941, and the contract of February 1, 1945, that the parties did not intend at that time, or thereafter, that absolute title should vest in her, or that the bank was parting with its entire interest in the property. The partition proceeding was not an adversary action for the parties were acting in unison to effect a mutual objective. The fact that plaintiff continued thereafter to advance money for the management of the property and that defendants on December 10, 1941, presented plaintiff with a written account of the financial status of the property corroborates the contention that plaintiff had an interest in the property and was not merely a creditor entitled only to the repayment of loans.

This conclusion is further evident from the provision in the report that defendants were to receive commissions for their efforts in making sales or rentals, thereby indicating that they were not regarded as the absolute owners of the property.

The extent of the bank's interest according to the original oral agreement of the parties in 1939 is set forth in the provision of the report which states:

"Gentlemen's agreement hereby put in writing. Any profits from sales or rentals and any and all receipts over and above this amount of $2,750 shall be divided equally between the present owners and the First National Bank."

If there were any doubt as to the existence of a binding agreement in 1939 or as to the nature and extent of the interest of the parties established thereunder, it is conclusively dispelled by the written contract of February 1, 1945, prepared and approved by the defendant Sidney Weise wherein it is provided that Bessie Weise held the title to the property in trust for the benefit of defendant Sidney Weise and plaintiff, who

were to divide the net profits after the payment of outstanding obligations and preferred claims.

Defendants, however, insist that this written agreement has no application, and that at the time the master's deed was executed the parties had, at most, an oral agreement which could not vary the terms of the deed under the statute of frauds.

The statute of frauds provides "All declarations or creations of trusts or confidences of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust. . . ." (Par. 9, ch. 59, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 55.09].)

This statute has been interpreted to mean that the trust need not necessarily be declared in writing but that there must be some written evidence manifesting the existence of the trust. (*Kingsbury v. Burnside,* 58 Ill. 310, 330.) Nor is it essential that the writing be executed contemporaneously with the declaration of trust. (*Fast v. McPherson,* 98 Ill. 496, 503; *Rankin v. Barcroft,* 114 Ill. 441, 454; *Gallagher v. Northrup,* 114 Ill. App. 368, 371.)

In the instant cause it is clear that at the time Bessie Weise took title under the deed there was an oral agreement that she was to hold that title for the benefit of plaintiff and defendant Sidney Weise who were to divide the net proceeds from the property. This oral agreement was referred to and incorporated in two written instruments and in diverse correspondence, all of which constituted a sufficient written manifestation of the trust to satisfy the requirements of the statute of frauds. Therefore, defendants contention that the statute of frauds barred plaintiff's action was properly overruled by the circuit court.

Similarly, the defense of laches predicated on the theory that plaintiff's cause of action accrued on November 16, 1939, when plaintiff delivered its deed to Bessie Weise is also without legal merit, inasmuch

as defendants waived that defense when they executed the contract of February 1, 1945, which reaffirmed their obligation under the original agreement.

The defense that the contract was ultra vires and therefore void, was also properly overruled by the circuit court. The alleged ultra vires nature of plaintiff's acts is not clear. Apparently defendants predicated this theory on the general rule that a national bank cannot enter a partnership, and that the agreement of February 1, 1945, referred to the parties as partners.

The defendant Sidney Weise, a layman, composed this contract, and although the word "partner" was used, it was not used in the technical sense for the agreement in no way created a partnership. There were no provisions for the sharing of losses since plaintiff alone was to furnish the required money, and there was no purpose to engage in a business as partners, but merely to liquidate a particular tract of property and to recover money due to the parties. It is established that the validity of acts under the National Banking Act under which plaintiff operated can be questioned only by the United States and not by private parties, where the statute imposes no penalty or forfeiture. (*Thompson v. St. Nicholas Nat. Bank,* 146 U. S. 240, 251.) Inasmuch as the National Banking Act does not impose a penalty or forfeiture on contracts which might be construed to create a partnership defendants herein are not entitled to question the contract on the ground that it is ultra vires.

Nor is there legal merit in defendants' plea that the partition decree was *res adjudicata* of the rights of the parties and a bar to this action. As hereinbefore noted, the partition proceeding was not an adversary action but rather one step in a program to obtain a merchantable title to the premises in accordance with the agreement of the parties. The plaintiff bank advanced the money for the suit and paid the ex-

penses incidental thereto. The parties at all times thereafter continued to recognize plaintiff's interest in the property. To permit defendant Sidney Weise to violate his agreement and take advantage of a recital in the decree that Bessie Weise was seized and possessed of the property, in the face of his written admission that title was taken in her name ''for reasons that seemed mutually advisable,'' and that title was maintained by her ''for the benefit of the two partners'' would be a distortion and perversion of the processes of the law.

Defendants final contention that plaintiff's action fails on the ground that as original trustee for the creditors of the LaSalle County Fair Association it could not acquire an interest in the trust property, is also untenable. Defendants insist that such conduct would constitute a fraud and all rights with reference to the property would, therefore, be unenforceable in a court of equity. Inasmuch as the program for the liquidation of the fair grounds property originated with the defendant Sidney Weise, and it was he who induced the bank to undertake this plan for their mutual benefit, it is not conscionable for him to avoid his obligations under the agreement by accusing plaintiff of perpetrating a fraud. Clearly, no fraud was practiced on him.

Nor was any fraud perpetrated on any of the other creditors. The principal creditors of the LaSalle County Fair Association, excluding plaintiff, were four other banks which were in receivership and were being liquidated. Their interests were purchased by defendants with funds furnished by plaintiff. As to the smaller creditors, some of their interests were purchased at private sales and the remainder were purchased at the partition sale, which was the only procedure by which the interests of parties whose whereabouts were unknown could be obtained. The decree set forth the distributive share of each creditor,

and it is not apparent to this court how plaintiff perpetrated any fraud against anyone by this procedure.

■ Moreover, defendants could not avoid their obligations on the ground that plaintiff committed a fraud against others. To permit a party to avail himself of the "clean hands" doctrine obtaining in equity courts, the inequitable conduct must be directed toward the defendant, and effect the equitable relations subsisting between the two parties and arise out of the transaction. (*Carpenters' Union v. Citizens Committee to Enforce Landis Award*, 333 Ill. 225, 250; *Fagan v. Rootberg*, 320 Ill. 586, 594.)

■ In the light of the foregoing analysis of the facts and the legal issues arising therefrom, it is the conviction of this court that the circuit court properly overruled the special defenses offered by defendants, and that the order decreeing that defendant Bessie Weise held the legal title to the property in controversy in trust for plaintiff and defendant Sidney Weise was in accordance with a proper interpretation of the facts and the law.

■ Inasmuch as defendant Sidney Weise devoted considerable time and effort toward the improvement of the property and the enhancement of its value, he should be compensated therefor, according to the terms of the agreement between the parties, the amount of which to be determined in the accounting proceeding which the circuit court properly referred to a master.

The judgment of the circuit court should therefore be affirmed.

*Judgment affirmed.*