H. E. WILLIAMS

*v.*

LEWIS DUTTON.

*Opinion filed February 19, 1900—Rehearing denied April 12, 1900.*

1. INJUNCTION—*tax can be enjoined only on some ground of equitable jurisdiction.* A tax may be enjoined only when relief by injunction is necessary to prevent a multiplicity of suits, remove a cloud from title, relieve against fraud, accident or mistake, avoid irreparable mischief, or afford some remedy for which the law is inadequate.

2. SAME—*mere illegality of tax is not ground for injunction.* The mere illegality of a tax or a threat to sell property to collect it affords no ground for equitable interference, but the party must seek his remedy at law.

3. SAME—*when tax cannot be enjoined.* There is no equitable jurisdiction for enjoining a tax where the officers are vested with legal authority to levy it, and it is levied without fraud for a purpose authorized by law, and relates only to personal property of a single individual, whose only complaint is that he should have been assessed in another county though not in fact there assessed.

APPEAL from the Circuit Court of Pike county; the Hon. JOHN C. BROADY, Judge, presiding.

A. CLAY WILLIAMS, State's Attorney, and WILLIAM MUMFORD, for appellant.

WILLIAMS & COLEY, and MATTHEWS & GRIGSBY, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

In the spring of 1898 Lewis Dutton, appellee, had as much as $75,000 loaned out on real estate security in Pike county, and the mortgages were recorded in that county. He was president of the Farmers' State Bank of Pittsfield, in that county, and a member of a firm in the lumber business in said city, but was not at Pittsfield in that spring except on one occasion, when he came on the night train and had a consultation with his attorneys and left

on the early morning train for the purpose of avoiding the assessor. He was assessed $20,000 on account of said credits by the assessor, under the head of "moneys other than bank, banker," etc., and lesser sums for back or omitted property for the years 1891 to 1896, inclusive. He had paid a tax levied on an assessment of $10,000 on account of these credits for the year 1897, and the back assessment did not include that year. A tax was levied based upon this assessment made in 1898, and he filed his bill in the circuit court of Pike county asking for an injunction against H. E. Williams, appellant, tax collector of Pittsfield township, to restrain him from levying upon his property or taking other proceedings to collect said taxes or returning the same as delinquent. The bill recites that for more than ten years complainant had been a non-resident of Pike county; that upon learning of the assessment he employed attorneys to go before the board of review and cause the assessment to be stricken from the rolls; that his attorneys appeared before the board but the board refused to grant relief, and that he then applied to the board of supervisors, but that board refused to take jurisdiction. A temporary injunction was granted. The answer denied that complainant was a non-resident of Pike county but averred that he was a resident of the city of Pittsfield, in said county, and had a place of business there and an agent for loaning and collecting money and interest. There was a hearing, and the court found that complainant was not a resident of Pittsfield township and that the property assessed was not in the hands of any agent in that township. The injunction was made perpetual, and this appeal was prosecuted.

The evidence showed the following facts: Complainant lived at Pittsfield, in Pike county, and was extensively engaged in business there until about 1880. He also owned a large amount of lands in the county and loaned money there. He is unmarried, and after leaving

Pittsfield, in 1880, he boarded at many different places in Chicago. He was assessed at Pittsfield in 1881 and applied to the board of review of Pike county, and upon his affidavit that he was a non-resident was relieved from the assessment. He was assessed again the next year at Pittsfield, but through attorneys he succeeded in having the board of review strike off the assessment upon the same ground as before. In 1891 he bought residence property in Englewood, in Cook county, and usually boarded there with the tenants when in Chicago, except in the year 1895, when he stayed at Austin, in that county. Before that he had furnished his room, but when he left Austin he shipped his room furniture to Winamac, Indiana, where it now is. He has large landed interests at Winamac, owning 2200 acres at that place. He bought the land in 1891, and since that time has spent about one-fourth of his time there. He has a room at that place, where his furniture is. He has spent several winters in California and some in Florida, and some of his time has been spent in Springfield, and in Havana, in Mason county. His name was in the city directory in Chicago for a few years, but it has not been there since 1890. He had no office or office furniture in Chicago. He voted two or three times in Chicago during the nineteen years, the last time being at one of the elections of President Cleveland. After leaving Pittsfield he came there four or five times a year, remaining there from two days to a week at a time, attending to his business. During the years for which the assessment in this case was made he did the business with his borrowers at the bank of which he was president, and he also looked after his lumber business, and had large landed interests, which were attended to mainly by an agent under power of attorney. He would collect interest, make loans and renew loans at the bank, and the borrowers would meet him there for that purpose. He had a box in the safe at the bank and kept the notes there until the fall of 1897. He was assessed there

on the notes and mortgages in 1897 and protested against the tax, but paid it, and in the fall of that year took the notes out of the box to Springfield ˙and Chicago,—as he testified, to be in a better position to resist taxation. Aside from that assessment of $10,000 complainant was never assessed on this property during all the time after 1880.   After being taxed at Pittsfield his attorney advised him that he had better be taxed on them at Chicago, and that this would put him in a better shape to resist taxation in Pike county.   In pursuance of that advice he sent a "friend" to the assessor in Chicago with instructions that he would not object to a gross assessment of $25,000, or a net assessment of $2500 on moneys and credits.   The result of the services of the friend was that he was not assessed at all on the moneys and credits in Chicago, but was assessed for that year $250 on "household and office furniture," and he had neither .

We have gone farther than most courts in approving the exercise of equitable powers to restrain the collection of taxes alleged to be illegal, but have always recognized the universal rule that relief of that kind cannot be granted except upon some ground of equity jurisdiction.   There has not been entire uniformity in the language of the decisions, but it is believed that the general rule has been recognized that there must be in any case special circumstances to justify the interposition of a court of equity.   The rule was emphatically stated, in *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, as follows:  "In no event will an injunction lie unless it is clearly made to appear that the party has been wrongfully assessed and will sustain irreparable injury unless the collection of the tax is enjoined."   The jurisdiction can only be exercised and the relief granted by way of injunction where it is necessary to prevent a multiplicity of suits, remove a cloud from title, relieve against fraud, accident or mistake, avoid irreparable mischief, or afford some remedy for which the law is inade-

quate. (Cooley on Taxation, 760, 772.) The mere illegality of a tax, or a threat to sell property to pay it, ordinarily affords no ground for interference, but a party must seek his remedy at law. In *Cook County* v. *Chicago, Burlington and Quincy Railroad Co.* 35 Ill. 460, it was said: "Ordinarily a party of whom a tax is illegally collected has an ample remedy at law by an action of trespass against the officer collecting it or by an action of assumpsit to recover back the money paid." In the same case the court said it had never been held that equity would take jurisdiction, even in the excepted cases, "without special circumstances showing that the collection of the tax would be likely to produce irreparable injury or cause a multiplicity of suits." If officers "proceed to impose a tax which the law has not authorized, or lay it for fraudulent or unauthorized purposes, then a court of equity will interpose to afford preventive relief, by restraining the exercise of powers perverted to fraudulent or oppressive purposes." (*Drake* v. *Phillips*, 40 Ill. 388.) In a case like this, where the officers are vested with legal authority to levy the tax, and it is levied without fraud, for a purpose authorized by law, and relates only to personal property and a single individual, there is no ground of equitable jurisdiction. In this case there was no fraud, actual or intended. The tax was levied for a lawful purpose, and if there was any illegality it was merely an erroneous determination where complainant's residence was. He had spent considerable of his time in Indiana, and his room furnishings were there. He had been in Chicago, but had not voted for years and his name did not appear in the city directory. It was, to say the least, an open question where his residence was, and it was decided by the taxing powers without fraud. Counsel do not suggest any recognized head of equity jurisdiction which the bill would bring the case within.

Again, the established rule of equity is, that it will not lend its aid to a complainant unless even-handed

justice and good conscience demand that relief should be granted. The law designs that taxation shall fall as an equal burden upon the citizens of the State according to their property, and here is a complainant asking to obtain release by the aid of a court of equity from a burden of taxation in Pike county because he ought to have been assessed in Chicago. At the same time he acknowledges that he was not assessed in Chicago and that he had paid no taxes on this property for seventeen years. The assessment of $250 on household and office furniture in Chicago did not include this property, and he was only assessed there by advice of attorneys, to better resist taxation in Pike county. The case of such a complainant, who has systematically and continuously evaded just taxation, does not appeal to the conscience of the court nor satisfy us that interference would promote natural right or justice. His complaint should not be entertained, but if he can show that the tax is illegal he should be left to his remedy at law.

The decree is reversed, the injunction dissolved and the bill dismissed.

*Reversed and bill dismissed.*