R. L. Cutler, as Guardian of Caroleen Elizabeth Jenkins et al., Minors, Appellee, v. Reon D. Hicks et al., Defendants. Clifford W. Warner, as Receiver for Huston Banking Company, Appellant.

Gen. No. 8,648.

Heard in this court at the April term, 1932. Opinion filed October 17, 1932.

Downing & Helfrich, for appellant.

Walker & O'Harra, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

The appellee, R. L. Cutler, as guardian of Caroleen Elizabeth Jenkins, Lillian Blanche Jenkins and Iris Josephine Jenkins, minors, filed his bill to the June term, 1931, of the circuit court of Hancock coun-

ty, Illinois, to set aside, as made in fraud of creditors, two deeds executed by Reon D. Hicks and wife, Helen E. Hicks, to Pearl J. Fox.

The bill alleged the recovery of a judgment on May 2, 1931, by the appellee against Hicks for $2,463.56 on indebtedness which had been owing prior to the making of the deeds, the issuance of an execution which was then in the hands of the sheriff, the making and wording of a quitclaim deed by Hicks and wife to Pearl J. Fox for 240 acres of land, in which Hicks had a contingent remainder at the time; that said deed was invalid because not sufficient to pass a contingent remainder; that the contingent remainder became vested by the death of a life tenant on March 9, 1931, and that Hicks thereupon became seized of an undivided one-third interest in the 240 acres of land; further alleged the making by Hicks and wife to Mrs. Fox and recording on March 25, 1931, of a warranty deed for this undivided one-third interest; that both of said deeds were made with intent to defraud the complainant and other creditors of Hicks and for the purpose of preventing a levy and sale by virtue of executions; that Hicks was heavily indebted, did not retain sufficient property to pay his creditors; that the conveyance was upon a secret trust and no consideration paid therefor, or if any consideration, not sufficient to constitute the deeds bona fide transactions; and that the judgment was in full force and effect.

The bill further alleged the recovery of a judgment by Clifford W. Warner as receiver of the Huston Banking Company, the appellant, for $15,265.32 on April 4, 1931, against said Hicks.

The bill prayed that the said deeds be set aside and removed out of the way of complainant's execution and declared null and void as to creditors and the appellee authorized to proceed under his execution and the sheriff directed to levy and advertise and sell said

undivided one-third interest in said real estate in satisfaction of appellee's judgment; further prayed that it be decreed that appellee have a superior lien upon the proceeds of sale when the property was sold.

Hicks, his wife, Mrs. Fox and Warner as receiver were made defendants and all personally served with process to the June term, 1931.

At the June term, 1931, before any further pleadings were filed, a stipulation was entered into by all of the parties, reciting the making of the deeds, the recovery of both judgments, the filing of the bill to set aside said deeds, the claim by Cutler that he had procured a first lien by filing a bill, and that it was claimed by Hicks and Mrs. Fox that he was indebted to her for $1,000 and interest. After such recitals, the stipulation agreed that said two deeds be set aside and declared of no force and effect except as creating a lien for Mrs. Fox to the extent of $1,000 and interest; that said deeds be removed out of the way of executions as having been made in fraud of creditors of said Hicks and with intent to hinder, delay and defraud creditors; that Mrs. Fox have a first lien for $1,000 and interest; that the costs of the suit be a second lien; "that the said judgments of the said Warner as receiver and the said Cutler as guardian are liens upon said undivided one-third interest in said real estate"; "that the question as to priority of the lien of said two judgments shall be determined by the court in said chancery case now pending, or in some other suit or proceeding as may be agreed upon by the attorneys for said two judgment creditors, and this agreement and stipulation shall in no way prejudice or affect the rights of either of said judgment creditors, except that in determining the priorities, whether in said pending suit or in some other suit, their rights shall be considered the same as if the said deed had been set aside as in fraud

of creditors and made for the purpose of hindering, delaying and defrauding creditors in the said pending suit instituted by the said Cutler as guardian.'' The stipulation stated that a partition suit involving this and other real estate was pending in McDonough county and that if the property was sold in that suit one-third of the proceeds of sale, after paying Mrs. Fox $1,000 and interest, should stand in the place of the land and be held by the master to await the determination of the priorities.

The defendant Warner, as receiver of the Huston Banking Company, in October, 1931, answered the bill, admitting or denying the allegations of the bill, and set up in his answer as an affirmative defense the matters, as follows: This defendant further answering states that the Huston Banking Company is a banking corporation, which for more than 20 years last past has conducted a banking business at Blandinsville, Illinois; that said bank was closed by the auditor of this State on the 26th day of December, 1930, and this defendant appointed receiver by said auditor, which appointment has been confirmed by this court, and this defendant is, under and by virtue of said appointment and confirmation, the duly appointed, qualified and acting receiver for Huston Banking Company, which is now in the process of liquidation under said receivership; that the complainant, R. L. Cutler, is and has been for more than 12 years last past, president and director of Huston Banking Company, and during that time until said bank was closed, as aforesaid, was actively engaged as such officer and employee of said bank in conducting the business and affairs of said bank, by reason whereof a relation of trust and confidence existed between him and said bank and its depositors, and it was his duty as such officer and employee to refrain from doing any act or thing wherein his personal interests conflicted with the interests of said bank.

This defendant further answering states that both of the judgments mentioned in said bill of complaint—the $15,265.32 judgment entered April 2, 1931, in favor of this defendant and the judgment for $2,463.26 entered May 2, 1931, in favor of complainant—were each for money originally obtained by R. L. Cutler for said Hicks from the Huston Banking Company while said Cutler was president and director of said bank and while he was guardian for said wards.

The said judgment in favor of this defendant included money due to the Huston Banking Company from Reon D. Hicks, on a number of notes, including the $5,500 note which was originally given by said Hicks as a part of the purchase price of a farm in Henderson county, known as the "Britt Farm," which J. E. Huston and R. L. Cutler owned in their own right; that at the time of such purchase said J. E. Huston was president of the Huston Banking Company and R. L. Cutler was assistant cashier of the same, and Reon D. Hicks had on deposit in said bank the sum of $35,000 in cash, and the said J. E. Huston and R. L. Cutler then and there induced, advised and persuaded the said Reon D. Hicks to withdraw the said $35,000 from said bank with which to purchase said Britt Farm from them, and in response to their solicitations the said Reon D. Hicks did withdraw the said $35,000 from said bank and paid it to the said J. E. Huston and R. L. Cutler, and gave his additional obligation for a total amount of $70,000 as the purchase price of said farm, and thereupon the said J. E. Huston and R. L. Cutler conveyed the said Britt Farm to the said Reon D. Hicks, whereby the said Reon D. Hicks was then and there rendered insolvent, and by reason whereof ever since that time has been and now is insolvent; and in said transaction the said J. E. Huston and R. L. Cutler received a large profit, to wit, the sum of $12,000.

And this defendant further answering states, that a note for $5,500 was given by said Hicks payable to the order of said Huston as a part of the purchase price of said Britt Farm, and which said $5,500 note was taken in the name of J. E. Huston and afterwards transferred by him to Huston Banking Company, and the $5,500 note included in said judgment in favor of this defendant, represents the same indebtedness as the original $5,500 note given as a part of the purchase price of said land.

And this defendant alleges that the note on which judgment was taken in favor of the complainant mentioned in said bill of complaint, was for money obtained by Cutler for Hicks from said Huston Banking Company when Hicks was known by Cutler to be insolvent, in violation of Cutler's duty as an officer and employee of said bank, and said note was originally given by said Hicks to Huston Banking Company, but the same was afterwards indorsed in blank by the cashier of said bank and delivered to said Cutler, and said Cutler thereupon in violation of his duty as an officer and employee of said bank and in violation of his duty as such guardian, withdrew from said bank $2,500 which he had on deposit in said bank as guardian of said wards. And this defendant states that said Cutler was not authorized by law nor by any order of any court to invest the money of said wards in said note, but did the same in violation of his duty and trust as such guardian, whereby he became personally liable to the said wards for the said $2,500 of their money so misused and invested, and he and his sureties on his bond as such guardian, are now and were at the time of the commencement of this suit, liable to said wards for the amount so placed in said note of said Hicks.

This defendant further answering states that during all of the time aforesaid, the said Cutler was an

officer of said bank, and from February 26, 1926, the said Cutler was an officer and employee of said bank and guardian of said wards, and as such a confidential relationship existed between him and said bank and between him and said wards, and during all of that time said Cutler had full knowledge of all the matters and things above set forth.

And this defendant alleges that at the time said bill of complaint was filed herein, the said R. L. Cutler had full knowledge of all the facts above set forth, and it was his duty as president of Huston Banking Company, to file said bill or to have this defendant file said bill, not only in behalf of the complainant as guardian but also in behalf of this defendant, so that such suit would inure to the benefit of this defendant or to the benefit of this defendant and the wards of complainant.

And this defendant states that it would be contrary to equity and good conscience for this court to decree that the complainant by the filing of his bill herein obtained a preference over the Huston Banking Company, or that the judgment of complainant was made a prior lien over the judgment of this defendant by the filing of the bill of complaint herein, and this defendant states that the filing of said bill was for the personal benefit of R. L. Cutler individually, and to prevent him or his bondsmen being held personally liable to said wards for the said $2,500 so used by him as aforesaid, and not for the purpose of securing assets for the benefit of the creditors of Reon D. Hicks, or as the result of superior vigilance on the part of complainant, and that the complainant does not come into this court with clean hands whereby he is now in a position to ask the aid of this court in establishing a lien in favor of the complainant to be paid out of the proceeds of the sale of said real estate, before any amount thereof is paid to this defendant.

All which matters and things this defendant is ready and willing to aver, maintain and prove as this honorable court shall direct, and prays to be hence dismissed with his reasonable costs and charges in this behalf most wrongfully sustained.

Exceptions were filed to parts of appellant Warner's answer, and as these exceptions constitute the main issue in this case, we produce them entirely:

"Exceptions taken by said complainant to parts of the answer of the defendant, Clifford W. Warner, receiver for the Huston Banking Company, to the bill of complaint in said cause for scandal and impertinence.

"1. For that part of said answer reading as follows:

"(a) This defendant further answering states that the Huston Banking Company is a Banking Corporation, which for more than 20 years last past has conducted a Banking business at Blandinsville, Illinois; that said Bank was closed by the Auditor of this State on the 26th day of December, 1930, and this defendant appointed Receiver by said Auditor, which appointment has been confirmed by this Court, and this defendant is, under and by virtue of said appointment and confirmation, the duly appointed, qualified and acting Receiver for Huston Banking Company, which is now in the process of liquidation under said Receivership. That the complainant, R. L. Cutler, is and has been for more than 12 years last past, President and Director of Huston Banking Company and during that time until said Bank was closed as aforesaid, was actively engaged as such Officer and employee of said Bank in conducting the business and affairs of said Bank, by reason whereof a relation of trust and confidence existed between him and said Bank and its depositors, and it was his duty as such officer and employee to refrain from doing any act or

thing wherein his personal interests conflicted with the interests of said Bank.

"(b)  This defendant further answering states that both of the judgments mentioned in said bill of complaint the $15,265.32 judgment entered April 2, 1931, in favor of this defendant, and the judgment for $2,463.26 entered May 2, 1931, in favor of complainant, were each for money originally obtained by R. L. Cutler for said Hicks from the Huston Banking Company while said Cutler was President and Director of said Bank and while he was Guardian for said wards.

"(c)  The said judgment in favor of this defendant included money due to the Huston Banking Company from Reon D. Hicks, on a number of notes, including the $5,500.00 note which was originally given by said Hicks as a part of the purchase price of a farm in Henderson County, known as the "Britt Farm," which J. E. Huston and R. L. Cutler owned in their own right; that at the time of such purchase said J. E. Huston was President of the Huston Banking Company and R. L. Cutler was Assistant Cashier of the same, and Reon D. Hicks had on deposit in said Bank the sum of Thirty-five Thousand Dollars ($35,000.00) in cash, and the said J. E. Huston and R. L. Cutler then and there induced, advised and persuaded the said Reon D. Hicks to withdraw the said $35,000.00 from said Bank with which to purchase the said Britt Farm from them and in response to their solicitations the said Reon D. Hicks did withdraw the said $35,000.00 from said Bank and paid it to the said J. E. Huston and R. L. Cutler, and gave his additional obligation, for a total amount of $70,000.00 as the purchase price of said farm, and thereupon the said J. E. Huston and R. L. Cutler conveyed the said Britt Farm to the said Reon D. Hicks, whereby the said Reon D. Hicks was then and there rendered insolvent, and by reason whereof ever since that time

has been and now is insolvent; and in said transaction the said J. E. Huston and R. L. Cutler received a large profit, to wit, the sum of $12,000.00.

"(d)  And this defendant further answering states that a note for $5,500.00 was given by said Hicks payable to the order of said Huston as a part of the purchase price of said Britt Farm, and which said $5,500.00 note was taken in the name of J. E. Huston and afterwards transferred by him to Huston Banking Company, and the $5,500.00 note included in said judgment in favor of this defendant represents the same indebtedness as the original $5,500.00 note given as part of the purchase price of said land.

"(e)  And this defendant alleges that the note on which the judgment was taken in favor of the complainant mentioned in said bill of complaint, was for money obtained by Cutler from Hicks from said Huston Banking Company when Hicks was known by Cutler to be insolvent, in violation of Cutler's duty as an officer and employee of said Bank, and said note was originally given by said Hicks to Huston Banking Company but the same was afterwards indorsed in blank by the Cashier of said Bank and delivered to said Cutler, and said Cutler thereupon in violation of his duty as an officer and employee of said Bank and in violation of his duty as such Guardian, withdrew from said Bank $2,500.00 which he had on deposit in said Bank as Guardian of said wards. And this defendant states that said Cutler was not authorized by law nor by any order of any court to invest the money of said wards in said note, but did the same in violation of his duty and trust as such Guardian, whereby he became personally liable to the said wards for the said $2,500.00 of their money so mis-used and invested, and he and his sureties on his bond as such Guardian, are now and were at the time of the commencement of this suit, liable to said wards for the amount so placed in said note of said Hicks,

"(f)   This defendant further answering states that
during all of the time aforesaid the said Cutler was
an officer of said Bank, and from February 26, 1926,
the said Cutler was an officer and employee of said
Bank and Guardian of said wards, and as such a
confidential relationship existed between him and said
Bank and between him and said wards, and during all
of that time said Cutler had full knowledge of all the
matters and things above set forth.

"(g)   This defendant alleges that at the time said
bill of complaint was filed herein, the said R. L. Cut-
ler had full knowledge of all the facts above set forth,
and it was his duty as President of Huston Banking
Company, to file said bill or to have this defendant file
said bill, not only in behalf of the complainant as
Guardian but also in behalf of this defendant, so that
such suit would inure to the benefit of this defendant
or to the benefit of this defendant and the wards of
complainant.

"(h)   And this defendant states that it would be
contrary to equity and good conscience for this court
to decree that the complainant, by the filing of his
bill herein, obtained a preference over the Huston
Banking Company, or that the judgment of complain-
ant was made a prior lien over the judgment of this
defendant by the filing of the bill of complaint herein,
and this defendant states that the filing of said bill
was for the personal benefit of R. L. Cutler individ-
ually, and to prevent him or his bondsmen being held
personally liable to said wards for the said $2,500.00
so used by him as aforesaid, and not for the purpose of
securing assets for the benefit of the creditors of Reon
D. Hicks, or as the result of superior vigilance on the
part of complainant, and that the complainant does
not come into this court with clean hands whereby he is
now in a position to ask the aid of this court in estab-
lishing a lien in favor of the complainant to be paid
out of the proceeds of the sale of said real estate,

before any amount thereof is paid to this defendant'' is impertinent in' that the said part of the said answer presents no defense to the bill of complaint filed in the above entitled cause and is wholly immaterial with reference to the matters alleged in the bill of complaint.

Other grounds for the exceptions were set out, which will be covered as the exceptions are discussed, and generally charged that the matters were impertinent and scandalous and did not constitute a defense to the matters set up in the bill of complaint and that other allegations in the answer were mere legal conclusions.

The court sustained appellee's exceptions to the matters set out in appellant's answer and excepted to, and there was a decree for appellee, from which appellant has brought the record to this court for review.

It is contended by appellant that he who comes into a court of equity must come with clean hands, which is elementary: (*Williams v. Dutton*, 184 Ill. 608; 1 Pomeroy's Eq. Jurisprudence, 3rd edition, page 656, section 397; 10 R. C. L. page 389, sec. 139; 21 C. J., page 184, sec. 165), and that equity will not lend its aid to a complainant unless even handed justice and good conscience demand that the relief prayed for should be granted. *Williams v. Dutton*, 184 Ill. 608, and as said by Mr. Justice Cartwright in *Williams v. Dutton, supra:* ''The established rule of equity is that it will not lend its aid to the complainant unless even handed justice and good conscience demand that the relief should be granted.''

It is also contended by appellee that appellant, by procuring a judgment and having an execution issued thereon, did not acquire any lien upon the land. Neither did appellee acquire a lien by his judgment and execution. If, prior to the filing of the bill by appellee to set aside the fraudulent conveyance, Mrs.

Fox, the grantee in the deeds, had conveyed the property to a bona fide purchaser, that purchaser would have acquired a good title as against both judgments. (*Rappleye v. International Bank,* 93 Ill. 396; *Lyon v. Robbins,* 46 Ill. 276, 279; *Hallorn v. Trum,* 125 Ill. 247, 252; *Union Nat. Bank v. Lane,* 177 Ill. 171, 174; *Davidson v. Burke,* 143 Ill. 139, 149.) And appellee further contends that by filing the bill to set aside the fraudulent conveyances and the service of process in that case, appellee acquired an equitable lien upon the one-third interest in the 240 acres of land. It was the first lien acquired, by either appellant or appellee, and is therefore to be first paid. (*Union Nat. Bank v. Lane,* 177 Ill. 171, 177; *Ballentine v. Beall,* 3 Scam. [4 Ill.] 203, 204; *Hallorn v. Trum,* 125 Ill. 247, 253; *Davidson v. Burke,* 143 Ill. 139, 149; *Lingle v. Clear Creek Drainage & Levee Dist.,* 281 Ill. 511, 520.)

As to the facts set forth in the answer and excepted to, the answer avers that the Huston Banking Company ceased business on December 26, 1930; that appellee had been a president and director for more than 12 years,—how many years more than 12 the answer does not say; that the farm was sold to Hicks while J. E. Huston was president and appellee an assistant cashier of the bank. It is not reasonable to presume that appellee was promoted from assistant cashier directly to the office of president, and from the allegations in the answer, Hicks may have and likely did purchase the farm 15, 18 or 20 years prior to the closing of the bank. It is averred that Huston and Cutler made a profit on this sale of $12,000. Nothing in the answer states how many acres were in the farm or its or their value. It is common knowledge and general information that after 1917 and 1918, in Illinois, all farm lands largely increased in value, and the allegations in the answer, on the fact stated that "Whereby the said Reon D. Hicks was then and there rendered

insolvent and by reason whereof ever since that time has been and now is insolvent,'' is a pure conclusion and is not warranted by any of the facts pleaded. The fact that $5,500 of the indebtedness, in the defunct bank, grew out of a note given by Hicks to J. E. Huston, sometime between 1912 and 1918 and was part of Huston's interest in the lands sold, can in no manner color the conduct of appellee in his connection with the bank. The sale of the land by Huston and appellee to Hicks, whenever it did occur, was not illegal or unlawful or even immoral, and in no manner transgressed the highest ethics of banking, so far as it affected the bank.

It is further alleged in the answer, and excepted to, that both of the judgments mentioned in the bill of complaint, the $15,265.32 judgment entered April 2, 1931, in favor of appellant, receiver, and the judgment for $2,463.26 entered May 2, 1931, in favor of appellee, ''were each for money originally obtained by appellee, R. L. Cutler, for 'said Hicks from the Huston Banking Company, while said appellee Cutler was president and director of said bank and while he was guardian of said wards,'' the imputation apparently being that appellee may have stolen the money, or made the loans to one notoriously insolvent, yet, no fact is averred or set out indicating but that these loans, when made, were good loans, bankable loans and such paper as all of the banks were anxious to get from 1917 and 1918, to 1929. In fact, the $5,500 note and most of appellant's judgment for $15,265.32 seem to be made up from notes secured by mortgage on these same lands sold, because the answer states: ''The said judgment in favor of this defendant (appellant), included money due to the Huston Banking Company from Reon D. Hicks on a number of notes, including the $5,500 note which was originally given by said Hicks as a part of the purchase price of a

farm in Henderson County, known as the 'Britt Farm,' which J. E. Huston and R. L. Cutler owned in their own right''; etc. The farm was purchased, as the briefs allege and it is not disputed, for $70,000, of which $35,000 was paid in cash and the balance of $35,000 secured back by notes and a purchase money mortgage. These notes, placed in the bank any time from 1917 to 1929, could not be presumed to be other than gilt edge security, not knowing the number of acres in the farm or the value of the land. Huston and Cutler, of course, if they placed any of these notes in the bank, were using the bank to aid their private enterprise, but it must be presumed that the board of directors passed on all these securities without Huston or appellee having any voice or vote. If so, it was a perfectly lawful transaction. The answer avers nothing to the contrary. As to the $5,500 note, appellee could not have secured these funds for Hicks, because in another part of the answer it is averred that this note was given ''by said Hicks payable to the order of said Huston as a part of the purchase price of said 'Britt Farm,' and which said $5,500 note was taken in the name of J. E. Huston and afterwards transferred by him to the Huston Banking Company.''

Nothing unlawful is shown to have been done or to have grown out of this farm transaction. Hicks never complained about it and without doubt, since 1929, in common with humanity, he has found himself ''broke.''

As to the Hicks note of $2,463.26, taken out of the bank by appellee, nothing in the answer shows when this note was given or when appellee obtained these funds for Hicks, whether the note was good or bad, and regardless of whether anyone—possibly appellee —was negligent in making the loan to Hicks, appellee made the bank good, put in the funds to take the note out of the bank and the bank has not or cannot suffer any loss. It is urged by appellant that appellee, in

taking this note out of the bank, unlawfully used funds belonging to his wards. Apparently, appellant is more interested in seeing the bank, of which he is receiver, suffer, than to see the moneys of these wards endangered. It is sufficient answer to this contention to say that appellant represents only the creditors of the bank, and in such matters where the creditors' interests are protected fully, the receiver should not be permitted to make complaint.

It is urged in these proceedings that appellee, as president and director of the bank, occupied a position of trust and fiduciary relationship to the bank and its creditors, which entitled the bank and its creditors to his knowledge, activity and service, after the relationship had ceased and the creditors had taken possession of the bank's assets through a receivership. The receiver does not represent the bank in its corporate entity. He merely represents the creditors to liquidate the bank's assets. The president and director of an active bank do not guarantee the success of the bank or the value of its assets. They merely undertake to use due care and exercise their best, honest judgment in managing the affairs of the bank. The relationship of the officers and directors to the creditors is expressed in *Becker v. Billings,* 304 Ill. 190, 198, where the court say: "In *Gottlieb v. Miller,* 154 Ill. 44, where it was claimed that the directors of an insolvent corporation were trustees of its assets for the benefit of its creditors, the court said: 'The proposition refers to the assets of an insolvent corporation as a "trust fund" and to the officers of the corporation as "trustees." This is not strictly accurate. The supposed trust does not fall within the definition of either an express trust, an implied trust, a resulting trust or a constructive trust. (1 Perry on Trusts,—2d ed.— secs. 24–27, inclusive.) At most, the assets of a corporation are, under some circumstances, a *quasi* trust

fund, and the directors or officers of the corporation, under some circumstances, *quasi* trustees.' In *Briggs v. Spaulding,* 141 U. S. 132, it is said: 'Bank directors are often styled trustees, but not in any technical sense. The relation between the corporation and them is rather that of principal and agent,—certainly so far as creditors are concerned, between whom and the corporation the relation is that of contract and not of trust.' "

With the creditors the relationship is that of contract and not trust. Again the court held in *Becker v. Billings:* "In the case of *Ellis v. Ward, supra,* the defendants were the directors who had misappropriated the money and who were still directors of the company when the bill was filed against them. 'It may be conceded that so long as a trustee continues to exercise his powers as trustee in regard to property that he can be called to an account in regard to that trust, but when he has parted with all control over the property and has closed up his relation to the trust and no longer claims or exercises any authority under the trust, the principles which lie at the foundation of all statutes of limitation assert themselves in his favor and time begins to cover his past transactions with her mantle of repose.' "

Nothing further needs to be added on the contention of appellant that appellee should have brought this suit in the interest of the creditors of the bank. Appellee had no authority to bring such a suit. Appellee had no obligation to bring such a suit. In this proceeding, appellee is not acting in his individual capacity but he is acting in a fiduciary capacity, in the interest of minor heirs, for whom he is guardian and in that capacity if all else were conceded, he owes no duty to the creditors of this bank. If he were negligent as president or director of the bank, this receiver, appellant, or the creditors have their action against

him. They have no action of any kind against appellee's wards. But it is insisted that appellee came into a court of equity without clean hands. Coming into a court of equity without clean hands is well defined in *Pitzele v. Cohn,* 217 Ill. 30, 38; *Fagan v. Rootberg,* 320 Ill. 586, 594; *Carpenters' Union v. Citizens Committee to Enforce Landis Award,* 333 Ill. 225, 251; *Messenger Pub. Co. v. Mokstad,* 257 Ill. App. 161, 167.

In *Pitzele v. Cohn, supra,* the court said: ''In *Guilfoil v. Arthur,* 158 Ill. 600, it was held a new contract founded on a new consideration although in relation to property respecting which there had been unlawful transactions between the parties, is not itself unlawful. And in *City of Chicago v. Union Stock Yards and Transit Co.,* 164 Ill. 224, it was said (p. 238) the maxim that a party must come into a court of equity with clean hands 'only applies to the particular transaction under consideration, for a court will not go outside of the case for the purpose of examining the conduct of the complainant in other matters or questioning his general character for fair dealing. The wrong must have been done to the defendant himself and must have been in regard to the matter in litigation.' And in *Phalen v. Clark,* 19 Conn. 421, the court said: 'We suppose it to be a well settled doctrine that if a plaintiff requires any aid from an illegal transaction to establish his demand, he cannot recover it, or, in other words, if he is unable to support it without relying upon an unlawful agreement between himself and the defendant he must fail. But if the parties have been engaged in business, either *malum in se* or merely prohibited by law, yet if the cause of action be unconnected with the illegal act and is founded upon a distinct and collateral consideration it will not be affected by their former unlawful conduct.' ''

In *Fagan v. Rootberg, supra,* the court held: ''In *Ely v. King-Richardson Co.,* 265 Ill. 148, the complain-

ants filed their bills in chancery against the defendant company for an accounting for salary earned and for other relief. It was contended by the company that the complainants did not come into court with clean hands, because, they said, they had, while in the employ of the company, begun the organization of a rival corporation in the same business for the purpose of carrying on business in competition with the defendant, and had induced a number of employees of the defendant to leave its employment and enter the employment of the new corporation, for which reason the complainants were discharged. It was there said: 'Even if the conduct of the complainants was inconsistent with good faith to their employer and constituted a breach of their contract, they did not thereby forfeit the compensation which they had before earned. They might be liable for damages for the breaches of their contracts,—perhaps they might be enjoined from pursuing a course of conduct inconsistent with their contract obligations,—but they could not be deprived of their compensation already earned. . . . The maxim that he who comes into equity must do equity cannot deprive the complainants of their right to an accounting which is not founded in any way upon their wrongful conduct.' "

And in *Messenger Pub. Co. v. Mokstad, supra,* it was held: "The rule that one who comes into equity must come with clean hands or he will not be entitled to any relief is limited to the misconduct of the complainant in regard to the matter in litigation. *Carpenters' Union v. Citizens Committee,* 333 Ill. 225; *Fagan v. Rootberg,* 320 Ill. 586; *Anisfield Co. v. Grossman & Co.,* 98 Ill. App. 180; *Cohn v. Pitzele,* 117 Ill. App. 342; same case affirmed 217 Ill. 30; *Consumers Co. v. Parker,* 227 Ill. App. 552.

"In the *Carpenters' Union* case the court said (p. 250): 'The rule that a complainant must come into

equity with clean hands means that he must do equity as respects the defendant's rights in the particular matter of the suit. . . . The dirt upon his hands must be his bad conduct in the transaction complained of. If he is not guilty of inequitable conduct toward the defendant in that transaction his hands are as clean as the court can require.'

"The rule is similarly stated in the *Fagan* case, and in this connection the court discussed the cases of *Ely v. King-Richardson*, 265 Ill. 148, and *Langdon v. Templeton*, 66 Vt. 173. In referring to the *Ely* case the court said (p. 594): 'The complainants filed their bills in chancery against the defendant company for an accounting for salary earned. . . . It was contended by the company that the complainants did not come into court with clean hands, because, they said, they had, while in the employ of the company, begun the organization of a rival corporation in the same business for the purpose of carrying on business in competition with the defendant, and had induced a number of employees of the defendant to leave its employment, and enter the employment of the new corporation.' Continuing, the court quoted from the *Ely* case as follows: ' "Even if the conduct of the complainants was inconsistent with good faith to their employer and constituted a breach of their contract, they did not thereby forfeit the compensation which they had before earned. They might be liable for damages for the breaches of their contracts,—perhaps they might be enjoined from pursuing a course of conduct inconsistent with their contract obligations,—but they could not be deprived of their compensation already earned. . . . The maxim that he who comes into equity must do equity cannot deprive the complainants of their right to an accounting which is not founded in any way upon their wrongful conduct." ' Continuing further the court quoted with approval from the

Vermont case above mentioned, after referring to the maxim under consideration, the following: 'it (the maxim) has its limits, and the administration of equitable relief in particular controversies is confined to misconduct in regard to the matter in litigation.'

"In the *Pitzele* case the court quoted with approval the rule as announced by the Supreme Court of Connecticut as follows: (217 Ill. 38) 'We suppose it to be a well settled doctrine that if a plaintiff requires any aid from an illegal transaction to establish his demand, he cannot recover it, or, in other words, if he is unable to support it without relying upon an unlawful agreement between himself and the defendant he must fail.'

"In the instant case complainant relies for relief on the wrongdoing of the defendants. The claim of the defendants that complainant is guilty of wrongful conduct is not in regard to the matters alleged in complainant's bill. The doctrine of unclean hands does not apply. The only exception to the rule is where the complainant, in conducting its business, is perpetrating a fraud on the public. *American University v. Wood,* 294 Ill. 186, affirming 216 Ill. App. 189."

Appellee may be a good man or a bad man; he may have handled the affairs of the bank in an excellent manner, or he may have overreached, have been negligent in handling the affairs of the bank and used his position in the bank for his own profit, for which the creditors of the bank have their remedy, but "clean hands" in this suit, means the merits of this cause of action and the conduct and methods appellee has used to prosecute this suit. By the result of this suit, appellant takes about $4,000 for the creditors of the bank. Appellee, in the interest of his wards, first discovered the concealed property and filed this bill to remove the fraudulent deed from the record and make the land subject to the lien of his judgment. Ap-

pellee, in the interest of his wards, therefore, is entitled to the reward for diligence. (*Ballentine v. Beall,* 3 Scam. 203; *Rappleye v. International Bank,* 93 Ill. 396, 400; *Cole v. Marple,* 98 Ill. 58, 67.)

If appellee had not filed this bill, appellant, in all likelihood, would have recovered nothing on his judgment, as receiver. Now, by virtue of this bill, appellant will recover about $4,000.

The circuit court of Hancock county did not err in sustaining the exceptions to the answer. Appellant, if he had any proofs, could have shown that appellee did not file his bill with clean hands without pleading the fact. (21 Corpus Juris, 186 and notes 44 and 45.) Appellant offered no proofs of any kind.

For the reasons stated, the decree of the circuit court of Hancock county is affirmed.

*Affirmed.*